McDonald v. Yoder.

---

## J. N. McDONALD v. GRACE YODER.
### No. 15,962.

#### SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Control of Automobile Driven upon a Highway.* Any person having control or charge of an automobile has the right to drive it upon any public street or highway, but in so doing he must exercise every reasonable precaution commensurate with the apparent danger to prevent the frightening of horses and to insure the safety of any person riding or driving the same.

2. ——— *Duty to Look for Travelers—Presumption of Notice.* It is the duty of one in charge of an automobile, driving upon a public street or highway, to look ahead and see all persons and horses in his line of vision, and in case of accident he will be conclusively presumed to have seen what he should and could have seen in the proper performance of such duty.

Error from Neosho district court; OSCAR FOUST, judge, *pro tem.* Opinion filed April 10, 1909. Affirmed.

*S. C. Brown, Bruce H. Grigsby, John J. Jones,* and *James W. Reid,* for the plaintiff in error.

*B. F. Shinn, H. P. Farrelly,* and *T. R. Evans,* for the defendant in error.

The opinion of the court was delivered by

SMITH, J.: Defendant in error recovered a judgment for damages for personal injuries against the plaintiff in error, who brings the case here for review. There are substantially two grounds of error assigned: First, that the court erred in overruling the demurrer to the plaintiff's evidence; second, that the court erred in denying the defendant's motion for a new trial.

It appears by the evidence that Miss Yoder and two other girls were riding on horseback in the little town of Earleton, going in a westerly direction along the main street, or road, when McDonald and his son, coming from the south, turned a corner 250 or 300 feet west from where the girls were at the time, and proceeded about the middle of the road toward the girls at a speed of from ten to thirteen miles an hour. The horses, especially the horse of Miss Yoder, manifested fright as soon as the automobile came in sight, but the automobile was driven toward them with unslackened speed and without turning to the right or left. It was broad daylight, and there was nothing to obstruct the view. Miss Yoder's horse, soon after seeing the automobile, turned and ran in a northeasterly direction, and was about to pass under a tree with a low-hanging branch when, to avoid being knocked off by the limb, she jumped to the ground and received the injury complained of. The automobile passed her about the time she jumped to the ground.

There was substantial evidence to support each of

the foregoing facts before the demurrer to the plaintiff's evidence was filed. Considering these facts as admitted on the hearing of the demurrer to the evidence, we can not say that a *prima facie* right of recovery was not established. An automobile is recognized in law as a proper vehicle of transportation upon the public highways of the state. The operation of the machine, however, is subject to the "law of the road," as established by custom and by statutory enactment. Section 6 of chapter 67 of the Laws of 1903 reads as follows:

"Every person having control or charge of a motor vehicle or automobile shall, whenever upon any public street or highway and approaching any vehicle drawn by a horse or horses, or any horse upon which any person is riding or driving domestic animals, operate, manage and control such motor vehicle or automobile in such manner as to exercise every reasonable precaution to prevent the frightening of any such horse or horses or domestic animals and to insure the safety and protection of any person riding or driving the same; and, if such horse or horses or domestic animals appear restive and frightened, the person in control of such motor vehicle shall reduce the speed thereof, and if practicable turn to the right and give the road, and, if requested by signal or otherwise by the driver of such horse or horses or domestic animals, shall proceed no farther toward such animal or animals, but remain stationary so long as may be necessary to allow such horses or domestic animals to pass. This provision shall apply to automobiles or motor vehicles going either in the same or in the opposite direction."

This section to a large extent incorporates into the statute the common law as it existed before the enactment, and is to be interpreted in accordance with the general principles of the common law. It is obviously incumbent upon the person having the control of an automobile, in the exercise of reasonable precaution, to prevent the frightening of horses or the injury of persons riding or driving the same, and to recognize the probability, especially in localities where automobiles are not much used, that horses will frighten at the ma-

chine even when it is carefully managed; and it is his duty to keep a lookout for all such animals, whether going in the same direction as his machine or in the opposite direction. This the defendant failed to do. After the horse of the plaintiff manifested fright he continued to approach it with unabated speed and in the middle of the road. We think the court properly overruled the demurrer and left it to the determination of the jury whether this was negligence.

It is urged that the horse became frightened when the automobile was 250 or 300 feet distant from it; that the defendant had done nothing which he had not a right to do in using the public highway, and had omitted to do nothing which he ought to have done at that time, and therefore that he is not responsible for the result. This the jury found not to be true. The horse was in plain view, and it was defendant's duty to see, and in legal contemplation he will be held to have seen, that the horse was frightened, yet he continued to approach it rapidly. It can not be said that the horse did not become more frightened by the approach of the machine, or that it would have run under the tree if defendant had stopped after he saw or could have seen that it was frightened or if he had materially reduced his speed or turned his machine to the opposite side of the road. If the horse became frightened and the injury occurred through no fault of the defendant, he, of course, should not be held liable in damages. If, on the other hand, the defendant continued to approach the horse in a manner that naturally would and did increase its fright, after he could and should have seen that in so doing he was endangering the plaintiff's safety, he was negligent. If, by failing to exercise such reasonable care to avoid an accident as the apparent conditions required, he caused the injury, he should pay the reasonable damages; otherwise he should not. This question is in no sense a question of law, but is one of fact for the jury to answer as to the proximate cause of the injury.

Buck v. Vickers.

After the demurrer was overruled the defendant offered evidence which elicited practically no new facts, except that he himself swore that he did not at any time see the girls or the horses and did not see that plaintiff's horse appeared frightened. Several other witnesses having testified to what they saw and to the defendant's opportunity to see, the jury had a right to believe that the existence of these facts would have been obvious to him if he had exercised any care whatever. His evidence, instead of excusing his action, may have tended rather to make his lack of care appear wanton or reckless.

The only ground urged for allowing the motion for a new trial is that the evidence was not sufficient to sustain the verdict. In this view we can not concur. We think there was substantial evidence to sustain the verdict. It was approved by the court, and we can not interfere.

The judgment is therefore affirmed.