WEST CONSTRUCTION COMPANY *v.* WHITE.

(*Knoxville.* September Term, 1914.)

1. **MUNICIPAL CORPORATIONS.** · Defect in street. Contribu-. tory negligence. Speed of automobile at night.

Where a person drives an automobile at night in a dark place so fast that he cannot stop or avoid an obstruction within the distance lighted by his lamps, he is guilty of contributory negligence. (*Post, pp.* 522-526.)

Cases cited and approved: Lauson v. Fond du Lac, 141 Wis., 57; McDonald v. Yoder, 80 Kan., 25; Corcoran v. New York, 188 N. Y., 131.

ON PETITION TO REHEAR.

2. **APPEAL AND ERROR.** Oral argument.

Acts 1911, ch. 25, which forbids appellate courts to reverse and dismiss upon the merits any case tried or triable by jury, without giving the parties an opportunity to be heard by oral argument of counsel, does not apply to an action heard by the judge without jury by consent of parties. (*Post, pp.* 526-528.)

Acts cited and construed: Acts 1911, ch. 25.

---

FROM HAMILTON.

---

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— NATHAN L. BACHMAN, Judge.

COOKE, NOLL & McALLESTER, for plaintiff.

W. B. MILLER and GEO. H. WEST, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Plaintiff in error was the owner of a concrete mixer, and, at the time the accident occurred which is the subject of the present controversy, had placed this piece of machinery on McCallie avenue, in the city of Chattanooga, with a view to doing certain work for the city. Owing to the weather it had not been possible to do the work, and the machine had stood on the side of the street for about two weeks. It was from four to six feet wide, twelve feet long, and nine feet high. It was located very close to the sidewalk—within four feet of it. McCallie avenue is a wide, well-kept street, but, at the place where this mixer was located, it was dark; the only street light was a ten or twelve candle power electric light, one-third of a block away, and the night being misty and dark the lamp did not shed much light on the place where the mixer was. There is a controversy as to whether a sufficient number of warning lights were hung on the object. Witnesses for plaintiff in error testified that two red lights were located there in such a position as that they might be seen from every direction. The collision occurred between 1 and 2 o'clock in the morning. There is evidence that at that time there was only one light, and that was on the front end of the mixer. The defendant in error's automobile approached the object from the

rear, and there is testimony that the red light on the front end of the mixer could not be seen from that direction.

Carl White, Jr., a son of defendant in error, was driving the machine. He testified that he went out McCallie avenue that night, going away from the city, and passed right by the concrete mixer, but does not remember having seen it. Coming back the same night, he says he did not see the object until he got within ten yards of it, and that he did not then have time to turn out before striking it.

There is much evidence in the record as to whether Carl White, Jr., was driving the car in excess of fifteen miles an hour, the speed limit allowed by the ordinance of Chattanooga. We assume that he was driving within the limit of fifteen miles an hour. We shall also assume that there was only one red light on the concrete mixer, and that one on the front end, and that it could not be seen by the driver of the automobile. Nevertheless defendant in error is not entitled to a judgment for the injuries caused to his automobile by the collision. It was negligence for the driver of the automobile to propel it in a dark place in which he had to rely on the lights of his machine at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of obstructions. *Lauson* v. *Fond du Lac*, 141 Wis., 57, 123 N. W., 629, 135 Am. St. Rep., 30. If the lights on the automobile would disclose obstructions only ten

yards away, it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects further away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen. *McDonald* v. *Yoder*, 80 Kan., 25, 101 Pac., 468.

• As said in Berry on Automobiles, page 158:

"One may be guilty of operating an automobile at a negligent rate of speed and still be wholly within the rate fixed by statute. As a general rule it is no defense to an action for injuries that at the time of the accident complained of the defendant was not exceeding the speed limit established by law."

The facts in *Lauson* v. *Fond du Lac,* supra, were these: Lauson was a passenger in a car driven not exceeding eight miles an hour by Hippe on the main highway between two cities of Wisconsin, and within the corporate limits of Fond du Lac. A culvert in the road was being replaced, leaving an opening of about eight feet in width and nine feet in depth. Barriers were erected on each side, consisting of a single fence board sixteen feet in length, nailed to a post on either side. The accident occurred at 10 o'clock on a dark, rainy night; the car running through the barrier and into the dangerous cut, and seriously injuring Lauson. The car had one light, tilted downward to light the road in front. The turning point in this case was that

the driver could not see objects more than ten or twelve feet ahead, and at the speed under which he was proceeding he could not bring his car to a stop within less than fifteen to twenty feet. The barriers were about four feet above the surface of the road, and the alleged negligence of the town "consisted in its failure to place a light around the opening, or to afford any protection to travelers, except such as might be afforded by the barriers that were erected." The court held the driver was guilty of common-law negligence as matter of law, barring recovery, and imputed the negligence to Lauson. Referring to the driver of the automobile, the court said:

"If he can see objects but ten feet ahead, while he cannot stop his car in less than twenty feet, is he using ordinary care? If not, and an injury results from his negligent act, neither he nor his passengers, if the conveyance be a private one, can recover damages for such injury."

The court further said:

"The driver of every automobile in the city knows that streets are frequently torn up for the purpose of repairing or rebuilding them, and for the purpose of laying water and sewer pipes, and for laying gas mains, conduits for carrying electric wires, and such like, and that repairs of such pipes, mains, and conduits must be frequently made, as well as connections with private consumers."

It is further said that drivers must know that live stock frequently roam unattended, and that travelers

on foot and on horseback and in various kinds of ve-
hicles use the highways at all seasons, and at all times
of the day and night, and for these reasons it was
said that:

"Such a driver has no right to expect, and does not
expect, a free and unobstructed right of way over a
well-defined track, as does the engineer of a locomo-
tive, or even the motorman of an electric car."

Continuing, the court said:

"It seems to us, and we decide, that the driver of
an automobile, circumstanced as was the driver of the
car in which the plaintiff was riding, and operating it
under such conditions as he operated his machine on
the night of the accident, is not exercising ordinary
care if he is driving the car at such a rate of speed
that he cannot bring it to a standstill within the dis-
tance that he can plainly see objects or obstructions.
ahead of him. If his light be such that he can see ob-
jects for only a distance of ten feet, then he should so
regulate his speed as to be able to stop his machine
within that distance, and if he fails to do so, and an
accident results from such failure, no recovery can be
had. This, it seems to us, is the minimum degree of
care that should be required. Circumstances might
arise where it would be reckless to drive at such a rate
of speed, or even at a rate approximating it. We do
not ground this rule on the fact that we have a statute
requiring automobiles to carry reasonably bright lights.
while being operated during the hours of darkness. In-
dependent of any statute, and considering the charac-

ter of these machines, we hold it would be negligent operation to run them without sufficient lights to enable the driver to see objects ahead of him in time to avoid them.''

As an opposing authority, we are referred to the case of *Corcoran* v. *New York,* 188 N. Y., 131, 140, 80 N. E., 660. The facts were very peculiar, and we do not think that case throws much light on the present controversy. However, assuming that it is an authority in opposition, we believe the Wisconsin case above referred to states the better rule.

The result is that the judgment of the trial court, and of the court of civil appeals, must be reversed, and the suit dismissed at the cost of the defendant in error.

### ON PETITION TO REHEAR.

A petition for rehearing has been filed, based on the proposition that the court, before dismissing the case, should have granted an oral argument, under chapter 25, Acts of 1911. That act reads as follows:

''An act to forbid reversal and dismissal of certain cases by appellate courts of this State without giving parties opportunity to be heard through their counsel by oral argument.

''Section 1. Be it enacted by the general assembly of the State of Tennessee, that the superior appellate courts of this State are forbidden to reverse any case tried or triable by jury in the lower courts, and to dismiss the same upon the merits without giving the parties an opportunity to be heard through their counsel

West Const. Co. v. White.

by oral argument in such appellate court or courts. This act shall apply to all such cases brought into said appellate courts by *certiorari* as well as those brought up by appeal or writ of error.

"Section 2. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it.

"Passed March 29, 1911."

The present case was heard in the trial court by the judge, without the intervention of a jury, by consent of parties. A judgment was rendered in favor of Carl White, the plaintiff below. The case was then appealed to the court of civil appeals and there affirmed, and was subsequently brought to this court by the writ of *certiorari*, with the result shown in the opinion.

The act reproduced was passed for the purpose of regulating the practice in the appellate courts, where motions for peremptory instructions had been made and either granted or refused in the trial court. The custom of the supreme court was to sustain or refuse motions for peremptory instructions in passing on petitions for *certiorari* to bring cases from the court of civil appeals, without oral argument, when it was deemed that the case was clear. So it not infrequently came about that a motion for peremptory instructions made in the trial court was sustained, and the suit dismissed in disposing of the petitions as they were presented to the court. To correct this practice the above-mentioned act was passed, requiring oral argument in

all cases as a necessary preliminary to dismissing a suit on its merits.

. It was intended to apply only to jury cases, as it is in these only that peremptory instructions can occur. Those tried, as was the one now before the court, by the trial judge without the intervention of a jury, are not jury cases, and so do not fall under the statute quoted.