DAVID L. SOLOMON, Respondent v. WAYNE A. DUNCAN, et al., Appellants.

St. Louis Courts of Appeals, May 2, 1916.

1. **TRIAL PRACTICE: Demurrer to Evidence: Rule of Decision.** In passing upon defendant's demurrer to the evidence, plaintiff's evidence must be viewed in the light most favorable to him.

2. **NEGLIGENCE: Ordinary Care: Unusual Conditions.** Unusual conditions, of which one is fully aware, increasing the danger at-

tendant upon his movements, merely serve to demand extra precautions on his part in order that he may be said to be in the exercise of ordinary care, such as the law expects and requires of him.

3. AUTOMOBILES: Duty of Driver: Unusual Conditions. If mist or fog render the headlights of an automobile which is being driven at night less than ordinarily effective, and the streets are wet and slippery, it is the duty of the driver of the automobile to exercise extra precautions to avoid striking an object in the street.

4. ————: Damage to Automobile: Obstruction in Street: Contributory Negligence. Where plaintiff drove his automobile at such a rate of speed on a misty night and over a wet and slippery street that he could not stop it after seeing an obstruction near the curb, three feet high, he was guilty of contributory negligence as a matter of law, barring a recovery for damages to the automobile, resulting from a collision with the obstruction.

5. ————: ————: ————: ————. In such a case, if plaintiff, with the aid of his headlights, could readily have seen the obstruction at a sufficient distance to enable him to avoid striking it, but was not looking forward and exercising ordinary care to watch out for objects ahead of him, he was guilty of contributory negligence as a matter of law, barring a recovery.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones,* Judge.

REVERSED.

*W. B. Homer,* for appellant Duncan.

*Chas. J. Macauley,* for appellant Urbauer-Atwood Heating Company.

*John Cashman* and *Sale & Frey* for appellant Schweig.

*J. W. Jamison* for respondent.

ALLEN, J.—This is an action to recover for damage to plaintiff's automobile, occasioned by coming into collision with an obstruction in the street. There was a verdict and judgment below for plaintiff for $430 and the case is here on defendants' appeal.

On the night of December 2, 1909, plaintiff was driving his automboile west along the north side of Delmar avenue, a public street in the city of St. Louis near its intersection with Aubert avenue, another public street in said city, when the machine struck a pile of debris on the top of which was an iron "radiator" such as is used for steam heating purposes.   The obstruction mentioned was situated near the north curb of the street in front of a newly erected building at 4927 · Delmar avenue, occupied by defendant Morris Schweig.   The defendant Duncan was the general contractor for the erection of the building, and the defendant Urbauer-Atwood Heating Company, as a subcontractor, furnished and installed the heating plant thereof, including the radiators.   The defendants are charged with negligence in placing the aforesaid obstruction in the street, and in failing to maintain thereon a warning light.   The suit originally proceeded against other defendants also, but was later dismissed as to all defendants, except these appellants.

The petition charges negligence both at common law and as for a violation of certain ordinances of the city of St. Louis.   An amendment · of the petition was allowed during the trial, and questions are here raised respecting that matter. · But we find it unnecessary to consider this or to notice the pleadings with particularity.

On the night of the casualty plaintiff and a friend, one Lukens, spent the evening "down town" where they had "something to eat and something to drink" at "McTague's," a restaurant or cafe, from which place they drove west in plaintiff's automobile, driven by plaintiff. According to their testimony it was "about midnight" when they reached "Cicardi's," another place where food and drink are· served, on the north side of Delmar avenue not far east of the point of collision.   They say that they stopped in front of · "Cicardi's" but did not enter, having decided to first put the automobile in plaintiff's nearby garage; and that they thereupon proceeded west until they ran into

the aforesaid obstruction opposite the building of defendant Schweig.

According to all the evidence, the automobile not only struck the radiator lying upon the top of the pile of debris, but climbed upon and went partly over it, whereby the machine was badly injured. It was a dark night, foggy or misty, and the streets were wet.

Lukens testified that the obstruction consisted of a pile of debris two or two and one-half feet high, on the top of which was the radiator; that the center of the debris was about three or four feet from the curb, and the heap or pile extended to the curb. He said that the inner wheels of the automobile were about three or four feet from the curb when the machine stopped.

Plaintiff stated that the pile of debris was "at least two and one-half feet high, and with the radiator it was three feet high," and that he was driving "at least four to six feet—or four feet" from the curbing.

Plaintiff and Lukens both testified that the speed of the automobile was about eight or ten miles an hour. They were the only eye witnesses to the collision, but a negro chauffeur, acquainted with plaintiff, who saw the latter's automobile when about one hundred and twenty-five feet east of the point of collision, testified that the speed thereof was then about eight miles per hour. This witness heard the explosion of a tire on plaintiff's automobile and went to the scene of the collision. He stated that the radiator was two or two and one-half feet from the curb.

Though the testimony as to the speed of the automobile is such as mentioned above, both plaintiff and Lukens testified that the latter was thrown from the automobile by the force of the collision, struck the street pavement about five feet from the automobile, slid along the street about fifteen feet, and was consequently about twenty feet from the automobile when "picked up."

Both plaintiff and Lukens testified that plaintiff's automobile was equipped with acetylene gas head lights which were in good condition and brilliant. As to

these lights Lukens said: "They make an exceedingly strong light, next to daylight." Plaintiff said: "I had a good light on my machine and I am a manufacturer of gas tanks and acetylene gas and certainly know how to use it."

On direct examination the plaintiff said that with his strong acetylene head lights he could not see more than eight or ten feet ahead of him on account of the fog or mist. When asked on cross examination as to how far the head lights would cast light so as to enable him to discover obstructions or objects in front of the automobile on the particular night, in view of the weather conditions, his answers were very evasive. He at first said that he thought that he could not see clearly ten feet ahead of him. Being further pressed as to this he said: "I could see ahead of me, yes, but I couldn't see down in front of me where this was." Q. "Could you see objects in the street ahead of you ten feet?" A. "I could see ahead of me ten feet." Later he said that he could not see this obstruction because he "couldn't see distinctly ten feet ahead"

Lukens testified that he thought one could see about fifty feet ahead of the automobile with the aid of the head lights, on that particular night.

Plaintiff testified that his brakes, both foot brake and emergency brake, were in good condition; but that he could not stop as quickly on a wet pavement as on a dry one. When asked whether or not he could have stopped his automobile in less than fifteen feet under the conditions present, and being pressed as to this, he said: "If it had not been foggy and I could have seen the obstruction I could have. If I would had to stop I probably could have stopped the machine in a few feet less than fifteen feet, if I had seen the obstruction around ten feet."

Lukens testified that in his judgment the automobile could have been stopped in forty to fifty feet.

Defendants Duncan and Schweig were called as witnesses for plaintiff. Duncan testified that the pile of dirt was "right in the curb" and extended into

the street only about three feet; and that one end of the radiator was on the curb and that the other rested on the dirt or debris. Schweig testified that the radiator was "lying mostly on the sidewalk," with perhaps ten inches thereof extending beyond the curb into the street, resting upon the pile of dirt or debris.

There is considerable testimony in the record relative to the location of a tool cart of the Laclede Gas Light Company which is said to have been standing in the street. According to the testimony of plaintiff, Lukens and the negro chauffeur, this cart was from fifty to one hundred feet west of the point of collision. According to some of defendants' testimony the cart was a short distance east of the debris. The evidence tends to show that no warning light was upon the obstruction into which plaintiff's automobile ran. There is a sharp conflict in the evidence as to whether or not there was a red light on the tool cart above mentioned.

Other phases of the evidence need not be here noticed.

There are many questions raised by appellants and discussed in the briefs, but in the view which we take of the case it is unnecessary to discuss any assignment of error except that pertaining to the ruling of the trial court on the demurrer to the evidence. This is for the reason that a consideration of the evidence in the record before us has led us to the conclusion that plaintiff was guilty of such negligence on his part as to preclude a recovery herein as a matter of law.

According to plaintiff's own testimony this pile of debris was at least two and one-half feet in height with an iron radiator lying on top thereof; and according to all of the evidence the debris and radiator were within at most a few feet of the north curb of the street. Defendants' testimony is that the radiator was for the most part upon the sidewalk or curb, and but a small part thereof extended into the street and rested upon a small pile of dirt or debris. Viewing the testimony in the light most favorable to plaintiff, manifestly the driver of an automobile approaching this obstruction,

could under the circumstances, readily have avoided collision therewith either by turning the machine aside or by stopping it, if in the exercise of ordinary care to have it under control and to keep a lookout ahead.

The testimony in plaintiff's behalf to the effect that he was driving but eight or ten miles per hour at the time of the collision is so far refuted by the physical facts that we would perhaps be justified in rejecting it altogether. In view of the fact that the force of this collision was such as to damage the automobile in the manner and to the extent shown by the evidence, and was likewise such as to hurl a passenger from his seat and cast him twenty feet from the machine, it would seem that a court ought not to be asked to give any probative force or effect to testimony of witnesses that the speed of the automobile was only eight or ten miles per hour. Likewise the testimony of plaintiff to the effect that he could not discern an object of the size and height of this construction ten feet ahead of his automobile, with the aid of powerful headlights, even on a night such as that described, is well nigh if not wholly incredible.

But as to this phase of the case we decide nothing. We shall not reject the testimony respecting the speed of the car, nor discard plaintiff's testimony as to the distance at which he could see an object such as this obstruction, under the conditions present. And for the purposes of our decision we shall view plaintiff's evidence, taken as a whole, in the light most favorable to him, as it should be viewed for the purposes of the demurrer.

If, as plaintiff says, he could not distinctly see an object of the character here in question ten feet in front of his machine, because of weather conditions, and he nevertheless was driving his automobile at such a rate of speed as to make it impossible to stop, with the appliances at hand, within such distance as he could discern such an object, then we think that he was plainly guilty of contributory negligence barring a recovery. If the night was misty or foggy, and the street wet and slippery, all the more care was needed

on his part. What is ordinary care will depend, of course, upon all the facts and circumstances of the case. And the law required that plaintiff exercise such care as an ordinarily prudent man would have exercised under the circumstances.

In West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301, the plaintiff on a dark night drove his machine into a concrete mixer which had been left upon the street by the defendant. The court held that plaintiff was guilty of negligence as a matter of law, saying:

"It was negligence for the driver of the automobile to propel it in a dark place, in which he had to rely on the lights of his machine, at a rate faster than enabled him to stop or avoid any obstruction within the radius of his light, or within the distance to which his lights would disclose the existence of an obstruction. [Lauson v. Fond du Lac, 141 Wis., 57, 123 N. W. 629, 135 Am. St. Rep. 30.] If the lights on the automobile would disclose obstructions only ten yards away, it was the duty of the driver to so regulate the speed of his machine that he could at all times avoid obstructions within that distance. If the lights on the machine would disclose objects further away than ten yards, and the driver failed to see the object in time, then he would be conclusively presumed to be guilty of negligence, because it was his duty to see what could have been seen. [McDonald v. Yoder, 80 Kan. 25, 101 Pac. 468.]"

In Lauson v. Fond du Lac, cited in the opinion in West Const. Co. v. White, supra, the court referring to the driver of an automobile, said:

"If his light be such that he can see objects for only a distance of ten feet, then he should so regulate his speed so as to be able to stop his machine within that distance. And if he fails to do so, and an accident results from such failure, no recovery can be had. This, it seems to us, is the minimum degree of care that should be required."

In Knoxville Railway & Light Co. v. Vangilder, 132 Tenn. 487, the plaintiff at night drove his machine

into an obstruction in the highway in passing another automobile. He testified that he was running but twelve or fourteen miles per hour and that he was "blinded" by the extraordinarily bright lights of the automobile which passed him, so that he could not see where he was driving. He did not discover the obstruction until within a few feet of it when it was impossible for him to stop the machine and avoid the collision. The court said:

"It is insisted on behalf of defendants in error that they were excused from the rule established by this court in the case of West Const. Co. v. White, 130 Tenn. 520, 172 S. W. 301. In that case it was held that, where a person drives an automobile at night in a dark place so fast that he cannot stop or avoid an obstruction within the distance lighted by his lamps, he is guilty of contributory negligence which will bar his recovery. That case held that this was true, although the defendant was guilty of negligence in leaving an unlighted obstruction in a public thoroughfare.

"We see no distinction that can be drawn in this case differentiating it from the case of West Construction Company v. White. The fact that the bright light from the large automobile was shining in the face of Vangilder, and that he was turning a curve where his own light did not shine directly in the way his machine was going around the curve, was a greater reason that he should have stopped or slowed up his machine, so as to avoid running into a place of danger.

"We therefore hold that the contributory negligence of Vangilder was such as to defeat his right of recovery, and the case is reversed and suit dismissed so far as his recovery is concerned."

The doctrine of these cases we regard as sound. In Lauson v. Fond du Lac, supra, the court's attention was called to cases holding it not to be negligence to drive horses over a highway on a dark night without lights. But the court, for reasons stated, declared that the doctrine of such cases should not be extended to automobiles.

The case before us is controlled by the rule of law announced in the early case of Butterfield v. Forrester, 11 East 60, a leading case in the law of contributory negligence. The plaintiff, riding violently, rode his horse upon an obstruction in the highway which was visible a hundred yards distant. Respecting his right to recover therefor, Lord ELLENBOROUGH, said:

"A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right . . . One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff."

The rule so declared was distinctly approved by our Supreme Court in Sindlinger v. Kansas City, 126 Mo. 415, 28 S. W. 857, where, in an opinion by GANTT, P. J., after quoting from Butterfield v. Forrester, supra, it is said:

"This is the general rule of law as to contributory negligence, which applies, as of course, to actions brought by travelers for injuries received by reason of defects or obstructions upon the highway. [Beach on contributory Negligence (2 Ed.), sec. 246.] Ordinarily the question whether the plaintiff, under all the circumstances, has been guilty of contributory negligence, is one for the jury. [Loewer v. Sedalia, 77 Mo. 431.] But if the evidence elicited to establish the contributory negligence of plaintiff admits of no other fair inference than that he was negligent and that his own negligence contributed directly to, or was, in other words, the proximate cause of the injury, then it becomes one for the court, and a demurrer to the evidence will be sustained."

In this connection see, also, Wheat v. St. Louis, 179 Mo. 572, 78 S. W. 790; Coffey v. City of Carthage, 186 Mo. 1. c. 585, 85 S. W. 532; Cohn v. City of Kansas, 108 Mo. 1. c. 393, 18 S. W. 973; Woodson v. Street Ry. Co., 224 Mo. 685, 123 S. W. 820; Ryan v.

Kansas City, 232 Mo. 471, 134 S. W. 566, 985; Border v. Sedalia, 161 Mo. App. 633, 144 S. W. 161.

In the case before us we think it clear that the evidence admits of no possible inference other than that plaintiff was negligent and that his negligence contributed directly to cause the loss and damage complained of. Had plaintiff been exercising the care which the law requires, undoubtedly he could have turned aside and avoided altogether the obstruction which was within a few feet of the curb and occupied but a small portion of the street. According to his testimony, and the whole theory of his case, there was nothing east of the debris to interfere with his movements. The street was wide and no other vehicles were about save the tool cart which, according to plaintiff's theory, was some distance west of the debris. Had it been directly east thereof, as some of the defendants' testimony indicates, plaintiff's automobile would have struck it before reaching the debris and radiator. And at any event there is no suggestion in plaintiff's testimony, or elsewhere in the record, that plaintiff was in fact in any way prevented from turning aside because of the presence of any other vehicle upon the street. And Lukens pointedly testified that there was no vehicle of any sort east of the debris.

And plaintiff's attempt to excuse his failure to stop his automobile and avoid the collision convicts him of negligence, as a matter of law, under the authorities, supra. The effect of his testimony is that, though his lights were powerful and his brakes in good condition, he could not see an object of the magnitude of this obstruction, three feet in height, in time to avoid plunging into it. Taking his evidence at its full face value, it convicts him of running his machine forward at such rate of speed as to make it impossible to stop after such time as he could discover the presence of any obstruction, person, vehicle or other object upon the street. The law should deny a recovery to one who thus plunges headlong into darkness with a reckless disregard of consequences.

In Wheeler v. Wall, 157 Mo. App. 38, 137 S. W. 63, the action was for damages resulting to plaintiff's automobile by a collision with the abutment of a bridge, made necessary to avoid a collision with defendant's automobile, and charged to be due to defendant's negligence. In denying a recovery because of plaintiff's negligence, this court through NORTONI, J., said:

"No one can doubt the general rule which condemns the plaintiff's cause when it appears that the injury received might have been averted and the consequences of defendant's negligence avoided by the exercise of ordinary care, under the circumstances, on the part of the injured person, who has omitted to do so. In such circumstances the case is one of mutual fault and concurring negligence, with respect to which the law will neither cast all of the consequences on the defendant nor attempt to apportion them between the parties. When, therefore, it appears that though defendant was negligent, the injury would nevertheless not have occurred but for the negligence of plaintiff as well, which contributed proximately thereto, a recovery will not be allowed, because such mutual fault or concurring negligence operate proximately together. [Cooley on Torts (3 Ed.), sec. 812; Moore v. Lindell Ry. Co., 176 Mo. 528, 75 S. W. 672.]"

It is proper to dispose of the case here on the theory upon which it was tried below, viz., that plaintiff was unable to see the obstruction in time to avoid striking it. On the other hand, if plaintiff, with the aid of his headlights, could readily have seen the obstruction at a sufficient distance to enable him to avoid striking it, but was not looking forward and exercising ordinary care to watch out for objects ahead of him, then no one can doubt that he must be pronounced negligent as a matter of law.

If mist or fog rendered plaintiff's headlights less effective, and the streets were wet and slippery, plaintiff was not thereby relieved of the duty to exercise ordinary care—such care as was commensurate with the danger. Unusual conditions, of which one is fully aware, increasing the danger attendant upon his move-

ments, merely serve to demand extra precautions on his part, in order that he may be said to be in the exercise of ordinary care, such as the law expects and requires of him.  [See Osborn v. Railroad, 179 Mo. App. 245, 166 S. W. 1118.]

·We have here to deal with a large obstruction upon the surface of ·the highway, which at first view must necessarily bring home to the driver of an automobile the danger to be incurred by running upon it.  What we have said as to the duty of the operator of a vehicle of this character to discover and avoid such an obstruction may perchance be wholly inapplicable ˏin a case where injury results from driving into or upon an unguarded hole, depression or other defect in the highway, of such character, it may ˏbe, that the danger arising from the presence thereof is not revealed by light cast forward along the roadway.  Were the case before us one of this nature a different question would be presented, and one which does not here call for decision. Under the facts disclosed by this record, however, we are convinced that plaintiff should be denied a recovery as a  matter of law.

The judgment will accordingly be reversed without remanding the cause.  It is so ordered.  *Reynolds, P. J.,* and *Nortoni, J.,* concur.