DIXIE-OHIO EXPRESS CO. v. MOORE et al.—118 S. W. (2d) 1021.

Eastern Section. February 2, 1938.

Judgment Affirmed by Supreme Court, May 11, 1938.

Sizer, Chambliss & Kefauver and Ralph Shumacker, all of Chattanooga, for plaintiff in error.

Cooke, Swaney & Cooke and H. B. Sullivan, all of Chattanooga, and Frank K. Boyd, of Athens, for defendants in error.

SENTER, J. These two suits, one by Thomas Moore, Administrator of the estate of G. G. Moore, deceased, and the other by T. E. Epperson & Company, both suits against the Dixie-Ohio Express Company, grew out of the same automobile accident and the two suits were tried together before the same jury and trial judge, resulting in judgments in favor of both plaintiffs, a judgment in favor of the administrator of G. G. Moore for the sum of $5,000 and a judgment in favor of T. E. Epperson & Company in the sum of $350.

The suit by Thomas Moore, Adm'r, was for damages for personal injuries sustained by G. G. Moore resulting in his death, by a collision between the automobile driven by G. G. Moore and a large freight truck belonging to the Dixie-Ohio Express Company. The suit by T. E. Epperson & Company was for damages to the automobile which was being driven by G. G. Moore.

For convenience the parties will be referred to as in the court below.

At the conclusion of all the evidence a motion was made by the defendant for a directed verdict in its favor as to both plaintiffs. This motion was overruled and the respective cases submitted to the jury under a proper charge by the court, resulting in the verdicts as above stated.

A motion for a new trial as to both cases filed by the defendant was overruled. From the action of the court in overruling its motion for a new trial in the respective cases the defendant has appealed in error to this court.

There is but one assignment of error, which is as follows:

"The trial court erred in failing and refusing to sustain defendant's motion duly made at the conclusion of all the evidence in the case to direct a verdict in favor of the defendant.

"(a) There is no evidence to sustain the verdict.

"(b) The uncontradicted evidence establishes the fact that plaintiff's intestate, G. G. Moore, was guilty of contributory negligence as a matter of law."

The respective declarations by the respective plaintiffs were in three counts. The first count averred common law negligence. The second and third counts averred the violation by the defendant of Subsections (a) and (c) of Section 2690, and Subsections (d) and (e) of Section 2695 of the Code of Tennessee.

Subsections (a) and (c) of Section 2690 are with respect to the parking of standing automobiles upon the paved or improved or

main travelled portion of any road, street, or highway outside of the business or residence district; when it is practicable to park or have such vehicles standing off of the paved or improved or main travelled portion of such road, etc.

Subsections (d) and (e) of Section 2695 of said Code makes provision with respect to the lights required on vehicles travelling at night on the highways.

The accident occurred after dark on February 8, 1936 on the paved highway known as the Lee Highway, between the towns of Athens and Charleston, Tennessee.

It appears that G. G. Moore and T. E. Epperson, who were friends and business associates, had gone to Athens, Tennessee, on the day of the accident for the purpose of purchasing a new Chevrolet automobile. They both left Athens to return to their home in Charleston. Moore was driving the new car on the return trip and Epperson was following or trailing Moore in his own car, which was the car that they had used in going to Athens to purchase the new car. They left Athens about dark or a little later, and after passing through the village of Sanford, Epperson observed that he seemed to be gaining on the automobile driven by Moore, which was distinguishable by the tail light on the car that Moore was driving. He had been observing his speedometer after leaving Athens because, as he testified, he knew that a new automobile should not be driven at a rate of speed in excess of twenty or twenty five miles an hour for the first few hundred miles, and had maintained or had practically maintained a distance of approximately a quarter of a mile in the rear of the new car. The road for some distance was straight and practically level. He first observed that he appeared to be gaining on the car driven by Moore, and he then observed that the Moore car had stopped on the road. When he got up to the point where Moore's car had stopped he saw that an accident had occurred and that Moore was injured.

Epperson testified in substance that he had been driving at a rate of speed of about twenty or twenty-five miles an hour and maintained a distance of about one-fourth of a mile to the rear of the Moore car; that the road was perfectly straight for some distance and practically level; that he observed that he seemed to be gaining on the automobile driven by Moore; that he could see the tail light on the Moore car; that it then occurred to him that the Moore car had stopped; that he observed a "bulk" in front of him, which he later discovered was the defendant's truck parked on the highway without any rear lights burning.

When he reached the parked truck he found that Mr. Moore had driven the automobile into the rear end of the truck, which truck was parked at an angle on the highway, taking up more than half of the paved portion of the highway. The paved portion of the

highway at that point is sixteen feet wide with a black line down the center, and with dirt shoulders four or five feet wide on either side of the concrete pavement.

Epperson was able to perceive the bulk of defendant's truck for a distance of about one-eighth of a mile, or about two hundred yards before he reached the point where the collision occurred.

Epperson took Moore into his car and started to take him home, but discovering that he was more seriously injured than he had first thought, he turned back and took him to a hospital in Athens.

It also appears that about the time Epperson discovered that he was gaining on the automobile driven by Moore another automobile coming from the opposite direction passed the automobile he was driving. He was then somewhere between one-fourth and one-eighth of a mile from the point where the collision occurred. Epperson did not know the exact moment that the collision occurred. In fact, he did not discover that an accident had occurred until he drove up to the scene of the accident.

When he reached the scene of the accident he discovered that a collision had occurred between the Moore car and a large truck of the defendant. There were two of defendant's trucks at the scene of the accident at the time of the collision. One of the defendant's large freight carrying trucks was standing on the dirt shoulder and off of the paved portion of the highway. The other large truck, and the one with which the Moore car collided, was standing a little to the rear of the front truck, but on the paved portion of the highway, standing at an angle so that the body of the truck extended out across the black line marking the lanes of traffic. He testified that there were no lights on the rear of the truck with which the Moore car collided. He did not testify whether or not the front truck standing on the shoulder had lights on it or not.

Other disinterested witnesses got to the scene of the collision a few minutes after the accident and they testified that there were no lights on the rear truck, the truck with which the Moore car collided, and no lights on the rear of the front truck parked on the shoulder of the road. One of these witnesses testified that as he approached the scene of the accident the front truck flashed the front lights on and off as a signal to him to stop.

The only real conflict in the evidence is with respect to whether there were lights on the rear of the truck with which the car driven by Moore collided. There was evidence by defendant's witnesses that there were rear lights burning on the truck with which the Moore car collided. However, these witnesses reached the scene of the accident several minutes after the collision occurred. There is positive evidence by the witnesses for plaintiffs that there were no lights either on the rear or front end of the truck when these

witnesses arrived at the scene. The conflict in the evidence has been settled by the jury verdict in favor of the theory of the plaintiffs.

The two trucks of defendant were large freight carrying trucks, and we must assume that the truck of defendant with which the car driven by Moore collided was standing on the right hand side of the right of way at an angle, and that the rear end of this large truck was several inches across the center stripe on the highway, without any lights on the truck exposed, either tail lights or headlights. The night was dark and cloudy and there is some evidence that it was threatening snow. It must be assumed that the lights on the new car driven by Moore were in good order and functioning properly at the time of the collision, and that the brakes on the car driven by Moore were in good working order, since the car was a new car and being driven for the first time and only a short distance on the way from Athens to Charleston. The car was being driven at a very moderate rate of speed, about twenty or twenty-five miles an hour. The road was level for a considerable distance.

It also appears without conflict in the evidence that an automobile had but a few moments before passed the two standing trucks and the car driven by Moore. According to the testimony of Mr. Epperson, this car coming from the opposite direction passed the car which he was driving when he was between one-fourth and one-eighth of a mile to the rear of the Moore car.

The reasonable inference would be that the car approaching from the opposite direction with headlights burning passed the parked trucks a few moments before the collision occurred, since it only ran a few hundred yards before it passed the car driven by Epperson. Epperson did not know the exact moment when the collision occurred. He did know that he had only a few moments before discovered that he appeared to be gaining on the car driven by Moore. The collision evidently occurred at about the time he made the discovery that he was gaining on the Moore car, driving at the rate of some twenty or twenty-five miles an hour.

The proof also showed that the right hand side of the front part of the car driven by Moore struck the left hand corner of the parked truck, which was standing at an angle and several inches across the center stripe in the road. This would indicate that when Moore discovered the obstruction he attempted to pass around to the left of the parked truck, and in so doing ran into the rear right hand corner of the parked truck.

From these facts we think there could have been a reasonable inference by the jury that the approaching automobile having passed the parked trucks and Moore at about the time, or a few minutes before the collision occurred, that the lights from the ap-

proaching car blinded Moore for the moment at least, and that Moore attempted to avoid the collision by turning to the left in an effort to pass the parked truck, and in so doing collided with the rear corner of the parked truck.

Appellant relies upon the rule announced in West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301; Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111; Cleveland Transfer Co. v. Clark, 6 Tenn. App. 364, and Tenn. Central Ry. Co. v. Schutt, 2 Tenn. App. 514.

As stated in the case of Main St. Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665, the basic rule as laid down in West Const. Co. v. White, supra, and decided in 1914, is that it is negligence for the driver of an automobile to propel it in a dark place in which he has to rely on the lights of his machine, at a rate of speed faster than will permit him to stop or avoid any obstruction within the range of his lights or within the distance at which his lights would disclose the existence of an obstruction. In that case it appeared that a concrete mixer, four to six feet wide, about twelve feet long, and about nine feet high was the obstruction which was revealed by the automobile headlights at a distance of thirty feet, when the speed of the automobile was less than fifteen miles an hour.

In that case it was held that the driver of the automobile could not recover for damages resulting from the collision on the ground that the driver of the automobile was guilty of proximate contributory negligence in not having the automobile under control, or by driving the automobile at a rate of speed that would prevent him from avoiding a collision with an object within the range or radius of his headlights.

The holding in the Vangilder Case, decided by the Supreme Court in 1915, sustained the rule as announced in the West Construction Co. Case, and the rule has been since followed in other cases. However, certain modifications to that rule have been made in the more recent reported cases by the Supreme Court and by this court.

In the case of Main St. Transfer & Storage Co. v. Smith, supra, Mr. Justice Swiggart reviews the several Tennessee cases wherein the rule in West Construction Co. v. White was involved, and, after analyzing the subsequent cases, stated (page 667): "There was nothing to indicate that the obstruction was not revealed at a distance as far ahead as the plaintiff, driving the automobile, could reasonably have expected his lights to disclose an obstruction. The scene of the accident was a city street, and, so far as disclosed by the opinion, the street was straight and its surface level."

This statement was made by the court in reviewing the case of

West Construction Co. v. White, supra. In the same opinion the court commented on the case of Knoxville Ry. & Light Co. v. Vangilder, wherein it appeared that the driver of the automobile in that case testified that he was blinded by the ''extraordinary bright'' lights of an approaching automobile, while rounding a curve so that he could not see the obstruction with which he collided until after it was too late to avoid it. The court ruled: ''The fact that the bright light from the large automobile was shining in the face of Vangilder, and that he was turning a curve where his own light did not shine directly in the way his machine was going around the curve, was a greater reason that he should have stopped or slowed up his machine, so as to avoid running into a place of danger.'' This ruling was predicated on the particular facts of the case, which facts, in the opinion of the court charged the driver of the automobile with notice of imminent danger which he might have avoided by reducing his speed while rounding this curve.

The case of Tennessee Central Ry. v. Schutt was also discussed in the opinion in the Smith Case by Mr. Justice Swiggart. In that case the driver of the automobile in which plaintiff was riding when injured, ran into the side of a railroad box car which was standing on a grade crossing of the street and railway. Mr. Justice Swiggart commented on that case and stated: ''There was nothing to distinguish the case from that in which the rule was formulated, and the Court of Appeals properly held the driver guilty of the only negligence disclosed by the facts of the case, the proximate cause of the accident.''

The Smith Case also reviews and comments upon the case of Cleveland Tranfer Co. v. Clark, supra, which was removed to the Supreme Court by a writ of certiorari, and the judgment of the Court of Appeals was affirmed, and in commenting on that case Mr. Justice Swiggart stated: ''. . . and the judgment of the Court of Appeals was affirmed for reasons stated in the memorandum opinion filed. That opinion, prepared for the court by the Chief Justice revealed that the writ of certiorari was granted in order that the court might re-examine and reconsider the rule of conduct prescribed in West Construction Co. v. White, supra, but the court concluded that the directed verdict for the defendant in that case was sustained by the fact that the plaintiff was not keeping such a lookout nor exercising such care in driving as is required of the driver of an automobile on city streets, and the judgment was affirmed 'regardless of the soundness and applicability' of the rule of the case cited.''

The Smith Case refers to and comments upon other cases wherein there appears to have been a modification of the rule announced in the West Construction Co. Case and especially the case of Pat-

terson v. Kirkpatrick, 11 Tenn. App. 162, in which petition for certiorari was denied by the Supreme Court, and in discussing that case the court stated: "In the first of the cases just cited, the plaintiff's automobile collided with the extended body of a parked truck. This body was a floor without sideboards, only a few inches thick, extending horizontally several feet beyond the rear axle and wheels. The truck was parked with its front wheels headed to the curb, 27 feet from a corner. The plaintiff testified 'that he did not see the truck until the collision occurred, because his lights were deflected to the right in turning the curve, and when he straightened up he was within seven or eight feet of the truck and saw the bulk of something but could not see the truck or the projecting floor because its body and the floor were above the rays of his lights.' The Court of Appeals distinguished the case before it from the facts of the earlier cases decided by this court, and ruled as follows. 'The question in this case was whether an ordinarily prudent man driving a car would anticipate an obstruction up in the air in the road, such as a cable stretched across the road or a pole, or, as in this case, a floor projecting out into the road, and should he accommodate his lights to such conditions and then drive at such rate of speed as to be able to stop when he saw such obstruction. This being out of the ordinary, the question of whether he was negligent and whether it contributed as a proximate cause to the accident, was properly submitted to the jury.' "

In Main St. Transfer & Storage Co. v. Smith the court further stated:

"The rule formulated and applied in West Const. Co. v. White was no more than an application to given facts of the familiar rule that the test of negligence is whether the action under scrutiny was in accord with the actions of reasonably prudent men under the same or similar circumstances. This was recognized by the able opinions of the Court of Appeals in the two cases last cited, in which it was ruled that exceptional circumstances made the applicability of the general rule a question of fact for the jury rather than a question of law for the court.

"The accident in which petitioners were injured occurred on a state highway, between two populous communities. This highway, as well as others of like character, was built to accommodate vehicles traveling at a high rate of speed. Speed as a factor of negligence in the operation of an automobile has been rendered of minor importance by common experience and by the removal of an arbitrary miles per hour limit from the statutes. These conditions have relatively increased the degree of negligence and danger involved in the parking of stationary vehicles or other obstructions on the paved surface of a highway. Travelers have become more confident of a free and unobstructed passage ahead on the

highways. In these circumstances we cannot now say with confidence, as a matter of law, that a person of ordinary prudence and caution would have reduced his speed below the rate of 25 miles an hour on approaching the crest of a grade, under the conditions in which petitioners were placed, because the surface of the pavement could not be seen beyond the crest. They had the legal right to expect that an obstruction just beyond the crest would be evidenced by a warning light, and whether they were proceeding negligently was at least a question of fact for the jury.

"Adhering to the general rule that it may be negligence in law to operate an automobile through darkness at a rate of speed which will not permit the avoidance of an obstruction disclosed by the rays of the lights with which the automobile is equipped, we are of opinion, and so rule, that exceptional circumstances will render the rule inapplicable, as contrary to the practice and experience of persons of ordinary caution and prudence. The emergencies and hazards of present-day travel by automobile are many and varied, and we think no arbitrary or universal definition of the circumstances which will render the rule inapplicable is possible. The facts and circumstances of the cases in which the rule is invoked, weighed in the light of observation and experience, must control and direct the ruling of the court in each particular case, as in other negligence cases."

It will thus be seen that in these cases the rule as announced in West Const. Co. v. White, supra, and the Vangilder Case and in the other cases that followed, has been modified, or at least the applicability of the rule has been explained, so as to introduce the exceptions to the general rule as suggested in the able opinion of Mr. Justice Swiggart in the case of Main St. Transfer & Storage Co. v. Smith.

Another case of interest is the case of Hoover Trucking Co. v. Percy McDonald, Am'r,[1] decided by this court in March, 1935. In that case the defendants relied upon the same line of cases as appellants rely upon in the instant case and this court stated:

"The defendant, Hoover Motor Express Co., further contends that its motions for directed verdicts in its favor should have been sustained upon the ground that it appeared from the undisputed evidence that McDonald was driving at a speed of at least fifty miles an hour at the time the collision occurred; that in driving at that rate of speed in the night time, and in failing to see the truck standing on the highway in time to prevent the collision, he was guilty, as a matter of law, of such contributory negligence as would bar any recovery in behalf of either of the plaintiffs. There is no evidence as to the exact moment when McDonald saw the obstruction in the highway or the rate of speed at which he was driving at the moment of the impact. He must have seen the lights

[1]No opinion for publication.

of the Broome car as it approached from the opposite direction. It is entirely possible, if not probable that he was so blinded by them that he could not see the Hoover truck ahead of him. If he saw it, he had a right to assume that a truck of this size would not be left standing unlighted in the highway, and the natural assumption would have been that it was traveling in the same direction he was going. He could not pass around it until the Broome car had passed him. There were trees on each side of the highway and the truck was dingy, brown color, so that it was difficult to see in the dark. In this situation, we are unwilling to say that McDonald was, as a matter of law, guilty of such contributory negligence as would bar any recovery in behalf of plaintiff.''

In the McDonald Case it is clear from the evidence and from the physical facts and the force of the impact, which killed both occupants of the car instantly, that the McDonald car was being driven at a rate of speed of not less than fifty miles an hour. Yet we held in that case that McDonald, driving at that rate of speed, could not have reasonably anticipated that there would have been a large freight truck standing in the highway without lights, and at night, so as to form an obstruction; and that he was not guilty of proximate contributory negligence in not having his automobile under such control that he could bring it to a stop within the radius of his lights. That is a much stronger case, in our opinion, than is presented by the facts of the instant case.

Another interesting case, decided by this section of the court in May, 1934, is the case of Inter-City Trucking Co. v. E. M. Greeson.[1] This case is very similar in its facts to the present case. In that case a large freight truck, heavily loaded, was left parked on the concrete paved surface of one of the main thoroughfares, and was en route from Memphis to Jackson, Tennessee, in charge of a negro driver. Just before this truck left Galloway, a town about thirty miles from Memphis, the lights went out, and were temporarily repaired by a mechanic at Galloway and the driver proceeded on his way. This was an old truck, and as it approached the town of Mason, a short distance beyond Galloway, motor trouble developed, and about a mile beyond Mason the motor stopped. The driver left the truck standing on the highway while he walked back to Mason to telephone the defendant company in memphis. This was about 1:30 A. M. He then went back to the truck and got into the cab and went to sleep. At about 2:00 o'clock two young men driving a car ran into the left rear corner of the truck, passed around the end, ran off the highway and turned over into a ditch. There were no lights on the truck and it was standing diagonally across the road about two feet over the center stripe in the highway.

---

[1] No opinion for publication.

It was a cold, damp night and these boys and the driver of the truck made a small fire on the highway. About ten or fifteen minutes afterwards a small truck came along going toward Mason and took the occupants of the car back to Mason. The driver of the truck called the owner of the truck by telephone about 2:30 o'clock in the morning, telling him of the wreck of the Chevrolet automobile driven by the two young men.

At about 4:00 o'clock in the morning, and before daylight, Mr. and Mrs. Greeson were driving southwardly on the highway, meeting the truck. Mrs. Greeson was driving her Cadillac Sedan, which was in good mechanical condition, equipped with good brakes and good lights. She was a good driver and was driving at a rate of speed from 37 to 40 miles an hour. She had been driving since they left Camden and Mr. Greeson was asleep. She was driving about the center of the highway. The first thing that attracted her attention when she approached the place of the collision was the lights from the wrecked Chevrolet, which shone on the water in the ditch on her left side of the road; she next saw her lights reflected in the headlights of another automobile (the defendant's truck) which seemed to her to be parked on her left hand side of the highway. She estimated that she was then about a "city block" away,—but was not good at estimating distances. She estimated that when she was about a half a block away she slowed down her speed to thirty miles an hour and turned to the right hand side of the road, thinking that there was room for her to pass the truck. Up to this time she had not seen the body of the truck, but as she got almost to the front end of the truck, the body of the truck "loomed" up before her. "It looked like a big garage setting across the road." The collision between the two vehicles resulted and both Mr. and Mrs. Greeson were seriously hurt.

In that case the contention by appellants was made that it was negligence, as a matter of law, for Mrs. Greeson to drive her car in a dark place in which she had to rely on the lights of her machine, at a rate of speed faster than would enable her to stop or avoid any obstruction within the radius of her lights, or within the distance which disclosed its existence; and, further, that the truck parked on the highway, with its lights out, in close proximity to a wrecked car in a ditch, and partially submerged in water, was an admonition of danger; and that she was negligent as a matter of law in not stopping her automobile or slowing it down to such speed that she could avoid a collision with any obstruction in the highway.

The truck in that case was covered with an old, muddy and dingy tarpaulin, which came well down over the sides of the truck.

This court held in that case, under the facts and circumstances as detailed in the opinion, that the rule in West Const. Co. v. White

was inapplicable and that it was a question for the jury to decide whether or not she was acting with reasonable care and caution at the time of the collision. We think that was a much stronger case than the instant case for the application of the rule referred to.

In the instant case we think there was material evidence that would well warrant an inference by the jury that the way and manner in which the two large trucks were parked on the highway, immediately in front of the car driven by Moore, and the decided probability of an approaching automobile coming from the opposite direction, with headlights burning, and which evidently passed these parked trucks at or near the time of the collision, blinded Moore and that his vision was obstructed at what is frequently referred to as the "dark spot," meaning that space between two automobiles driving at night with bright headlights, as they come close together and about the passing point, creates a dark space which prevents the driver of either vehicle from seeing an obstruction occupying the dark space.

There were other facts and circumstances that would also warrant an inference that Moore, when he did observe the parked truck, could not tell that it extended across to the opposite side of the center stripe, and that he swung his car to the left to avoid a collision with the truck, and in so doing the front right hand side of his car collided with the rear corner of the parked truck, parked at an angle across the paved portion of the highway and extending over the center stripe.

We are, therefore, of the opinion that these facts and circumstances, present at the time of this collision, make the rule as announced in West Const. Co. v. White and subsequent cases inapplicable.

We are of the opinion that Mr. Moore, the driver of the new car, was driving the automobile at a very moderate rate of speed. The car was brand new and was being driven for the first time, and the lights and brakes were no doubt in perfect working order. There is no reasonable explanation as to why this experienced driver would have run into the rear end of this large parked truck unless some of the conditions above referred to operated to prevent his seeing this parked truck in time to prevent the collision.

It results that we find no error in the action of the learned trial judge in overruling and disallowing the motion of defendant for directed verdicts in its favor, and in overruling the motion for a new trial. The assignments of error are accordingly overruled, and the respective judgments in the respective cases are affirmed.

The cost of this appeal will be paid by the appellant and sureties on the appeal bond.