# TENNESSEE CENTRAL RAILWAY COMPANY v. ELEANOR P. SCHUTT.

Middle Section. January 29, 1926.

Certiorari denied by Supreme Court, May 22, 1926.

1. **Appeal and error. Assignment of error that peremptory instruction should have been given and the assignment that there is no material evidence to support the verdict are practically the same.**

   If there is evidence to take the case to the jury there is evidence to support the verdict of the jury, hence the disposition of one of the above assignments disposes of the other.

2. **Negligence. It is an act of negligence to drive an automobile at a rate that it cannot be stopped within the distance lighted by its lamps.**

   It is an act of negligence for a person to drive an automobile at night in a dark place so fast that he cannot stop or avoid an obstruction within the distance lighted by his lamps.

3. **Negligence. The negligence of a driver of a car is not imputable to an invited guest.**

   Where a person is riding in an automobile as an invited guest any negligence on the part of the driver is not imputable and will not bar a recovery on the part of the guest.

4. **Negligence. An invited guest must exercise reasonable precaution for his own safety.**

   One occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precaution for his own safety; this obligation is a continuing personal one.

5. **Railroads. The mere obstruction of a street or highway by a train for reasonable length of time is not negligence.**

   In the absence of a statute, the mere fact that a railroad company obstructs a street or highway at a public crossing, by letting a train of cars remain thereon for a reasonable length of time, and for proper purposes, is not negligence, and the company is not responsible for injuries caused thereby.

6. **Negligence. An injury is not actionable if it could not have been foreseen.**

   It is an elementary principle of the law of negligence that an injury is not actionable if it could not have been foreseen or reasonably anticipated.

7. **Negligence. Passenger in an automobile which ran into a train standing across the highway not entitled to recover damages.**

   In an action to recover damages for personal injuries caused by the automobile in which plaintiff was riding being driven into a box car standing across a street, held that the railroad was not required to anticipate that one would likely drive into a train standing across the street and it was not negligent in not having a trainman standing beside the train, although it was a foggy night and the crossing was at a dark place.

Appeal in Error from First Circuit Court of Davidson County; Hon. A. G. Rutherford, Judge.

Reversed.

R. F. Jackson, of Nashville, for Railway Co., plaintiff in error.

W. H. Washington and Shriver & Shriver, of Nashville, for Eleanor P. Schutt, defendant in error.

FAW, P. J.  The defendant in error, Mrs. Eleanor P. Schutt (hereinafter called plaintiff), suffered serious and permanent personal injuries on February 2, 1923, as the result of a collision between an automobile in which she was riding as an invited guest and a box car of plaintiff in error, Tennessee Central Railway Company (hereinafter called defendant), which was standing on a grade crossing of Twelfth Avenue North over a switch track of defendant, in the city of Nashville.

The case was tried to a jury in the first circuit court of Davidson county, and the jury found the issues in favor of the plaintiff and assessed her damages at $3000; whereupon judgment was rendered for plaintiff and against defendant for $3000 and costs.  A motion for a new trial seasonably made by defendant was overruled, and defendant thereupon prayed an appeal to the Court of Civil Appeals, which was granted by the trial court and perfected by the defendant.

The defendant has tendered sixteen assignments of error in this court, all of which are grounded on matters presented to the trial judge in the motion for a new trial, and the case has been ably argued by the learned counsel for both parties at the bar and in elaborate briefs and written arguments.

The first assignment is that "the court erred in refusing to grant defendant's motion for peremptory instructions to the jury to return a verdict for the defendant at the close of all the evidence in the case;" and the second assignment is that "there was no material evidence to support the verdict."

The two assignments above quoted call for an examination of the record from substantially the same viewpoint.  Southern Railway Co. v. Lewis & Adcock Co., 139 Tenn., 37, 44; F. W. Woolworth Co. v. Connors, 142 Tenn., 678, 688.  If the first assignment of error be sustained, the plaintiff's suit will be dismissed here.  If the first assignment had been omitted, and the second assignment should be sustained, the case would be remanded to the circuit court for a new trial.  This is the only practical difference in the effect of the first and second assignments of error.  If there was evidence to take the case to the jury, there was evidence to support the verdict of the jury.  Hence, our disposition of the first assignment, whether it be sustained or overruled, will render further consideration of the second assignment unnecessary.

The plaintiff is a married woman and the mother of a large family of children. She was in her fiftieth year at the time she suffered the injuries for which she has sued in this case, and at that time and for a number of years theretofore she lived in North Nashville, at No. 1816, 4th avenue North.

During the afternoon of February 2, 1923, plaintiff went to the home of her brother, Lee Chumley, who lived in a different and distant neighborhood, to-wit: at No. 1800 Hayes avenue, near St. Thomas Hospital in the western part of the city.

Lee Chumley was not at his home on the occasion of plaintiff's visit above mentioned, but his wife was there, and was hostess. Plaintiff traveled on the street car when she went from her home to Lee Chumley's residence. She remained at the Chumley home until about nine o'clock at night. It was a very dark night and was "drizzling rain." Lee Chumley owned a "Ford Sedan" which was at the Chumley home and evidently subject to the orders of Mrs. Chumley. Mrs. Chumley offered to have her son, Otto Chumley, take plaintiff (and some others) home in the Chumley car, which offer was accepted, and it was on this journey that the collision occurred which gave rise to this lawsuit.

Otto Chumley drove the car from the Chumley home to the scene of the collision. He had been driving automobiles about two and one-half years and was a competent automobile driver. In addition to Otto Chumley, the driver, there were four persons in the automobile. Miss Sherman was on the front seat with Otto. Plaintiff and her young daughter, Eleanor, and Miss Allen were on the rear seat—plaintiff sitting in the middle, plaintiff's daughter on plaintiff's left, and Miss Allen on plaintiff's right.

After leaving the Chumley home at the corner of Hayes street and Eighteenth avenue, the automobile proceeded north on Eighteenth avenue to Church street, east on Church street to Twelfth avenue, and north on Twelfth avenue to the point where Twelfth avenue crossed the aforementioned switch track of defendant, and where a box car loaded with brick was standing across Twelfth avenue in the path of the automobile in which plaintiff was riding. The automobile was driven head-on into the side of the box car. The front wheels and a part of the radiator of the automobile went under the side of the box car. The box car was not moved until the automobile and its occupants had been taken from their perilous situation, but, as a result of the collision, plaintiff was thrown forward in the automobile and her leg was broken at or near the knee—the bone being fractured in two places.

Otto Chumley, the driver, was familiar with the route he was traversing, but plaintiff was not accustomed to travel over Twelfth

avenue and did not know that she was in the vicinity of a railroad crossing until the collision occurred.

The track on which the box car was standing at the time of the collision was known as the "main switch lead" of the defendant, and which diverged from defendant's main line at or near Van Blarcom Station in West Nashville, and extended eastward, across the intervening avenues, including Twelfth avenue North, to First avenue; and from this main switch lead a number of spur tracks led to industries served by the defendant. This switch lead was not a part of the defendant's main line, and no road engines pulling passenger and freight trains were used on that track. It was used only by switch engines engaged in switching operations, and while there was a considerable volume of freight handled over that track, the proof is that "a very liberal average" of the engines crossing Twelfth avenue North at the place of the collision was six in each twenty-four hours.

Twelfth avenue North is a well-paved street, and is the main artery of travel between the western and northern portions of the city of Nashville; but the proof discloses the presence of only two vehicles on Twelfth avenue North, in the vicinity of the Tennessee Central Railway crossing, at the time of the collision, viz: the automobile in which plaintiff was riding and an automobile driven by the witness Devaney, who had stopped a few feet north of the track to await the removal of the car which obstructed the crossing, and was standing at that point when the car in which plaintiff was riding collided with the south side of the box car.

The box car with which the Chumley automobile collided was one of a train of about fifteen cars coupled together, which train was being moved back and forth on the main switch lead and some of the various spur tracks as a part of switching operations necessary and proper in the usual course of defendant's business as a common carrier of freight.

In the vicinity of the Twelfth avenue crossing, the general direction of the switch lead was east and west. The train of cars was moved by a switch engine attached to its western end, but the engine was headed eastward, and the train was coupled to the pilot of the engine, so that, when the train moved westward, the tender attached to the locomotive was moving in front, and there was a step or "running board," at the front of the tender on which running board a member of the train crew with a lantern was accustomed to stand as the train moved from place to place. There was also a headlight on the front of the tender. When we refer to "the front of the tender" in this connection, we mean the extreme western end of the train as it was made up on the occasion in question. The

train was manned by a switching crew consisting of a foreman, engineer, fireman, headbrakeman and rear brakeman.

A few minutes before the collision here under investigation the train had moved westward from some point east of Twelfth avenue and had stopped with the engine standing west of Twelfth avenue and the cars completely obstructing the Twelfth avenue crossing. In the course of this movement, and about the time the front of the train reached the eastern margin of Twelfth avenue, the head brakeman stepped from the running board at the front of the tender and walked out in Twelfth avenue, on the south side of the railroad track, and flagged the crossing with a lighted lantern until the train occupied the crossing. The train was stopped at the point before mentioned in order that the foreman might uncouple the cars at a point which was located about three car lengths east of Twelfth avenue as the train was standing.

As soon as the train occupied the crossing, the head brakeman (carrying his lantern with him) walked eastward to a point where the foreman was uncoupling the cars. The purpose of the head brakeman in thus walking east was to transmit to the engineer a signal from the foreman when the latter was ready for the train to move. The testimony of the head brakeman (Guthrie) is that it was necessary for the signal to be transmitted by someone because there was a curve in the railroad track between the foreman and the engine which would prevent the engineer from seeing a signal given by the foreman at the point where the foreman was uncoupling the cars. The plaintiff proved, in rebuttal, that the track was straight from the engine to the point where the foreman was uncoupling the cars, and that the curve begun east of that point.

Before the foreman had completed the uncoupling, the collision occurred. Guthrie heard the noise caused by the collision and immediately told the foreman that someone had run into the train.

As soon as the automobile struck the box car, Otto Chumley hurried to the engine in order to inform the engineer of the dangerous situation of the automobile under the box car. Otto Chumley says in his testimony that there were two cars between the engine and Twelfth avenue. In other words, that the engine was two car lengths west of Twelfth avenue. The train had been standing across Twelfth avenue two or three minutes when the collision occurred.

Plaintiff's declaration contains, inter alia, the following averments:

"At the time of said injuries, to-wit: on the 1st day of February, 1923, the defendant had carelessly and negligently left one or more of its freight cars upon one of its tracks which crosses Twelfth avenue North, a public and much traveled thoroughfare and street

within the city limits of Nashville, and immediately across said street at night, and at a part of the city where the city lights were insufficient to disclose the presence and location of said freight car.

Said car and train was an unlawful obstruction to the street, endangered the public safety and was a common and public nuisance, and the defendant had negligently failed to have any trainmen or lights there to warn the public of the dangerous presence and location of said car, well knowing that said street was much traveled and that vehicles were liable to be passing and repassing along it at any moment."

The undisputed testimony of Otto Chumley is that the automobile he was driving when plaintiff was injured was equipped with "regulation lights," and that they were "pretty good lights." He says the lights were "focused down" and lighted the street about "six yards" in front of the automobile, and that he was watching the street in front of him but did not see the box car in time to stop before the collision. The testimony of the witnesses with respect to the rate of speed of the automobile just before the collision ranges from eight to thirteen miles per hour.

We think it clear that the driver of the automobile was guilty of negligence which was a proximate cause of the collision. It is an act of negligence for a person to drive an automobile at night in a dark place so fast that he cannot stop or avoid an obstruction within the distance lighted by his lamps. West Construction Co. v. White, 130 Tenn., 520; Knoxville Railway & Light Co. v. Vangilder, 132 Tenn., 487, 492.

But, upon the undisputed evidence in this case, plaintiff was riding as an invited guest in the Chumley car, and, therefore, the negligence of the driver was not imputable to her. Knoxville Railway & Light Co. v. Vangilder, supra; Stem v. Interurban Railway Co., 142 Tenn., 494, 508; James v. Street Railway Co., 3 Higgins, 298, 309; Huddy on Automobiles, sec. 808; Schultz v. Old Colony Railroad Co. (Mass.), 8 L. R. A. (N. S.), 597 and Note.

"It is likewise true that one occupying a vehicle as a guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself from the exercise of reasonable precaution for his own safety; this obligation is a continuing personal one." Stem v. Interurban Railway Co., supra.

However, we are inclined to the opinion that upon the undisputed evidence in this record it might be held, as a matter of law, that plaintiff was free from negligence on the occasion in question; but we need not go that far. Certainly it cannot be held on this record, as a matter of law, that plaintiff was guilty of proximate contributory negligence.

The question remaining, under the first assignment of error, is whether, after resolving all conflicts of evidence in favor of the plaintiff, and viewing the evidence in that aspect most favorable to the plaintiff of which it is reasonably susceptible, there is evidence upon which the jury could lawfully find that defendant was guilty of actionable negligence which constituted an efficient cause of the collision in question and the resulting injuries to plaintiff.

Stated in another form, the question is, did the defendant owe a legal duty to the plaintiff, at the time of the collision, which it failed to perform, and the breach of which was the proximate cause of the plaintiff's injuries?

"In the absence of statute, the mere fact that a railroad company obstructs a street or highway at a public crossing, by letting a train of cars remain thereon for a reasonable length of time, and for proper purposes, is not negligence, and the company is not responsible for injuries caused thereby." 22 R. C. L., p. 994, par. 222.

So far as we are informed, we have no statute on this subject in Tennessee, and we have no hesitation in holding that, according to the undisputed evidence, the train with which the Chumley automobile collided had not been permitted to remain on the crossing for an unreasonable length of time or for an improper purpose.

However, we need not dwell on the point just stated, as we do not understand that it is insisted for plaintiff that the mere presence of the train of cars on the crossing, for two or three minutes, in the course of a switching operation, would, without more, charge the defendant with negligence. But it is contended with much force and plausibility that because of the extreme darkness which surrounded the crossing, it was the duty of the defendant to have some person, or a warning signal of some kind, at the crossing to warn travelers on Twelfth avenue of the presence of the railroad cars which obstructed the street.

It was a very dark night and the darkness was intensified by the "drizzling rain," fog and smoke. There were two electric lights maintained by the city in Twelfth avenue near the crossing—one about 125 feet north and another about 150 feet south of the crossing. The light north of the crossing was burning, but the one south of the crossing was not burning, at the time the collision occurred. There was a tall building—the Phillips & Buttorff Foundry, four or five stories high—extending along Twelfth avenue from the crossing southward for about a block.

It is an elementary principle of the law of negligence that "an injury is not actionable if it could not have been foreseen or reasonably anticipated." 20 R. C. L., p. 13, par. 9.

"A mere failure to ward against a result which could not have been reasonably expected is not negligence." Gage v. Boston &

Maine Railroad (N. H.), L. R. A., 1915 A, 363; Jacobson v. N. Y., etc., Railroad, 87 N. J. L., 378, 381, 94 Atl., 577.

Applying the principle just stated to the facts of the instant case, the question is, would the employees of the defendant, in the exercise of reasonable care, have anticipated that on account of the darkness the cars upon the crossing were such an obstruction that people traveling along the highway, in an automobile, at a reasonable rate of speed, properly equipped with lights, and carefully operated, would be liable to come into collision with them. (219 Mass., 410).

This question has been answered in the negative by several courts of last resort and of high repute in the American judiciary, upon facts which, in their essential features, are quite similiar to the facts of the case at bar. See Trask v. Boston & Maine Railroad, 219 Mass., 410, 414, 106 N. E., 1022; McGlauflin v. Boston & Maine Railroad (and six other cases in the same opinion), 230 Mass. 431, L. R. A., 1918 E, 790; Phila. & Reading Railway Co. v. Dillon (Del.), 15 A. L. R., 894; Gilman v. Central Vermont Railway Co., 93 Vermont, 340, 16 A. L. R., 1102; Nadasky v. Public Service Railroad Co. (N. J., 1922)) 117 Atl., 478, 479; Gage v. B. & M. Railroad (N. H.), L. R. A., 1915 A, 363; Jacobson v. N. Y., etc., Railroad Co., 87 N. J. L., 378, 94 Atl., 577. See also Annotations in 15 A. L. R.; p. 901 and L. R. A., 1918 E., p. 792.

We do not mean to be understood as saying that the facts of each of the cases last above cited are exactly parallel to the facts of the present case, but the facts of some of the cases thus cited are strikingly similar to the facts of the instant case, and in each case the direct point we have under consideration in the present case was decided. Some of these cases were suits brought by drivers of automobiles and others were brought by guests riding in automobiles driven by other persons.

The same question was raised in the following cases: Warden v. Chicago & N. W. Railway Co. (Wis.), 193 N. W., 356; Farmer v. N. Y., etc., Railroad Co., 217 Mass., 158, 104 N. E., 492; Allison v. Chicago, etc., Railway Co., 83 Wash., 591, 145 Pac., 608.

But in each of the three last cited cases, the court held that the question as to whether the defendant was guilty of negligence was immaterial (and it was pretermitted or reserved) because the plaintiff was precluded from a recovery by his own negligence.

We see no occasion to extend this opinion by a discussion of the opinions above cited, or by quotations therefrom. They are, in their last analysis, bottomed upon the principle that "the law does not impute negligence to an injury that could not have been foreseen or reasonably anticipated as the probable result of a given act or omission." (Thompson on Negligence (2 Ed.), sec. 28).

Opposed to this array of eminent authorities, we have discovered but one case, and that is the case (cited in plaintiff's brief) of Prescott v. Hines, 114 S. C., 262, 103 S. E., 543.

Prescott v. Hines, supra, was an action by Prescott against Hines, as Director General of Railroads, for personal injuries from collision with a train, standing across a street, of an automobile, belonging to and driven by another, in which plaintiff was riding. At the close of the evidence a motion for a directed verdict on behalf of defendant was overruled and the jury found for plaintiff. Judgment was entered on the verdict and defendant appealed. The question we are considering in the instant case arose in that case under what was known in the record as ''the first group of exceptions,'' and all that is said in the opinion of the court with respect to this subject is as follows:

''As to the first group of exceptions: There was some evidence by which it was reasonable to infer that there was actionable negligence on the part of the defendant. There was evidence that the train was standing still, blocking one of the most traveled streets in the city of Columbia, and that the cars had no light of any kind upon them, or near them, or any guard or watchman to give warning; that on the night in question there was a fog or smoke, that made the place where the cars were standing dark, and obscuring the same. This was evidence on the part of the plaintiff. No railroad man in charge of the train, and present at the time of the injury, was put on the witness stand to deny the same. Under all of evidence in the case, his Honor could not have granted a nonsuit, or directed verdict, as asked for by the defendant, and these exceptions are overruled.''

It is seen that the South Carolina court cited no authority and offered no reason for its conclusion. Without further discussion, it may be said that, we concur in the almost unanimous ruling of the courts on this subject. In this view, the trial judge should have sustained the defendant's motion for peremptory instructions. The defendant's first assignment of error is therefore sustained.

The question presented by the first assignment of error lies at the threshold of the case, and our ruling upon that question renders the remaining assignments of error immaterial, as the assignments numbered four to sixteen, inclusive, relate to the charge of the court or to the refusal of the court to give requested instructions to the jury.

It results that the judgment of the circuit court is reversed, the verdict of the jury is set aside, and the plaintiff's suit is dismissed.

The costs of the cause including the costs of the appeal, will be adjudged against the plaintiff Mrs. Eleanor P. Schutt.

Crownover and Heiskell, JJ., concur.