MAIN STREET TRANSFER & STORAGE COMPANY, PLAINTIFF IN ERROR, *v.* B. C. SMITH AND S. C. SMITH, DEFENDANT IN ERROR.

(*Knoxville,* September Term, 1933.)

Opinion filed October 21, 1933.

C. G. MILLIGAN, for plaintiff in error.

FORD & BRYAN and JOE V. WILLIAMS, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The petitioners, B. C. Smith and S. C. Smith, plaintiffs in the circuit court, recovered damages for personal injuries. The judgments in their favor were reversed by the Court of Appeals, and their suits dismissed as on directed verdict. The cases are before us by *certiorari*, heretofore granted on the petition of the Smiths.

The petitioners were injured when the automobile in which they were riding, owned by B. C. Smith and operated by S. C. Smith, crashed into the rear end of a large furniture truck or van, parked on the pavement of a concrete highway leading into the city of Chattanooga. The truck, owned and operated by respondent, was on the right side of the pavement, headed in the direction petitioners were traveling, with its right wheels at the edge of the concrete, so that the entire body of the truck was on the pavement. There was a dirt-surfaced shoulder at

the point which, as shown by photographs exhibited with the record, was wide enough to accommodate the truck.

Grounds of negligence charged in the declaration of each of the petitioners are the parking of the truck without lights, and parking on the pavement, particularly at a point where the view of approaching motorists was hindered or obscured by a grade of the highway.

The accident occurred about 7:30 P. M. in January, 1931. Petitioners testified that it was very dark at the time, and that the visibility of the road was poor, because of fog. They were driving at a speed of about twenty-five miles an hour, with both of them on the front seat and looking ahead. Their automobile had just passed over the crest of a "knoll" when the headlights revealed the truck, too near to them to permit their automobile to be stopped, although the brakes were in good condition and were immediately applied. Both testified that the truck was within 20 or 25 feet of the crest of the knoll, and that it had no lights burning, either in front or on the rear. The mechanic summoned to the aid of petitioners testified that there were no lights burning on the truck when he arrived.

The evidence of the respondent is that the truck's motor went dead at the point of the accident, because of a defective magneto, and it was left in charge of the negro driver, while his companion went to Chattanooga for a mechanic. Both the driver and his companion testified that two lights were burning at the rear of the truck, and the driver said this condition continued to the time of the accident. One of these rear lights was the ordinary red light, near the left rear wheel, while the other was a red light at the top of the truck, on the right side of the rear end of the body.

Respondent's evidence is further that the truck had not reached the crest of the knoll when it stopped, and was therefore not on the descending slope beyond the crest, thus contradicting the testimony of petitioners as to its location at the time of the accident.

The driver, seated in the truck, testified that the truck was knocked forward 8 or 10 feet by the collision, from which it was argued that the speed of the automobile was greater than petitioners admitted.

The truck driver also testified that when his motor failed, he "rolled on as far as he could and got as far off the concrete as he could get." But the evidence states no reason for not letting the truck roll entirely off the concrete and onto the shoulder, except a suggestion of the owner's agent, riding with the driver, that if the shoulder was soft it might have been difficult to drive the truck back on the paved surface.

H. L. Carson, witness for respondent, was driving his automobile in the direction the petitioners were traveling, and reached the scene of the accident while the mechanic, summoned from Chattanooga, was removing the wrecked automobile from the rear of the truck. He testified that the red light at the top of the truck was then burning and was seen by him at a distance of 300 yards. Other evidence to the same effect was introduced by respondent.

The theory of the petitioners is that as their automobile was ascending the grade of the highway, approaching the crest, the rays of their headlights were thrown upward, passing over the truck and not revealing it; that it was not until their automobile had passed the crest of the grade and was again on a level or descending surface that their lights could fall upon the truck, and then the truck

was only a few feet distant, so that the collision could not be avoided.

We quote the following question and answer from the testimony of S. C. Smith: "Now, from the location of that truck there in the highway and the construction of the highway itself, could you have seen that truck any farther away than what you did see it? A. Well, if it had had a light on it, I could."

There was no objection to this answer as expressing a conclusion of the witness, and the statement is supported by the testimony of Carson, above referred to, that after the accident and before the truck was moved, a light at the rear of the truck was seen by him from a distance of 300 yards.

Since there was positive and affirmative testimony that no lights were burning on the truck at the time of the accident, it was within the proper province of the jury to find as a fact that the light seen by Carson was turned on by the driver of the truck after the accident. Reconciliation of testimony in this way is a proper function of a jury.

In the Court of Appeals the respondent made two assignments of error: That there was no evidence to sustain the verdict, and that the trial judge erred in overruling respondent's motion for a directed verdict. The only ground of the motion for a directed verdict was that petitioners were guilty of proximate contributory negligence in driving their automobile at such speed that it could not be stopped in time to avoid striking an object revealed by its headlights.

The Court of Appeals apparently sustained both assignments of error. We quote from the opinion of that Court:

"If the knoll or rise in the road prevented the plaintiffs from seeing the truck until they reached the crest of said knoll, and if they then saw the truck as we understand them to have testified, it is difficult for us to see wherein the failure to have lights on the truck could have had anything to do with the happening of the accident.

"After examining the evidence we are of the opinion that the plaintiffs' own evidence shows that their car was being operated at a speed greater than that at which they could stop within their range of vision, and that under the holdings in the White, Vangilder, Clark and Schutt cases they were guilty of such contributory negligence as barred their recovery as a matter of law. We think this case is easily distinguishable from the case of *Patterson* v. *Kirkpatrick,* 11 Tenn. App., 162."

The testimony of S. C. Smith and Carson, above referred to, clearly sustains the finding of the jury that the absence of a light burning at the rear of the truck was negligence, but for which the petitioners might have seen the truck and avoided the accident. Particularly is this true since the truck was equipped with a light at the top of the body, which, if burning, could have been seen by petitioners before they reached the crest of the knoll and before the rays of their own headlights revealed the presence of the truck. We think therefore that it was a question of fact for the jury to determine, whether the absence of a light was the proximate cause of the accident, and that there is evidence to support such finding. The verdict is therefore sufficiently supported, regardless of the further proposition, pleaded in the declarations, that respondent's agents were negligent in permitting the truck to remain on the pavement of the highway rather than on the shoulder. The Court of Appeals

did not refer to that issue, and we find it unnecessary to consider it.

The cases cited by the Court of Appeals, in support of its holding that plaintiffs were guilty of proximate contributory negligence as a matter of law, are: *West Const. Co.* v. *White,* 130 Tenn., 520, 172 S. W., 301; *Knoxville Ry. & Light Co.* v. *Vangilder,* 132 Tenn., 487, 178 S. W., 1117, L. R. A., 1916A, 1111; *Cleveland Transfer Co.* v. *Clark,* 6 Tenn. App., 364; *Tenn. Cent. Ry. Co.* v. *Schutt,* 2 Tenn. App., 514.

The basic rule, stated by this court in *West Const. Co.* v. *White, supra,* decided in 1914, is that it is negligence for the driver of an automobile to propel it in a dark place, in which he has to rely on the lights of his machine, at a rate of speed faster than will permit him to stop or avoid any obstruction within the range of his lights, or within the distance to which his lights would disclose the existence of obstructions. The case in which this rule was formulated was one in which a concrete mixer, four to six feet wide, twelve feet long, and nine feet high, was the obstruction which was revealed by the automobile's headlights at a distance of thirty feet, when the speed of the automobile was less than fifteen miles an hour. The case does not disclose any circumstances complicating the situation in which the plaintiff was placed at the time of the accident. There was nothing to indicate that the obstruction was not revealed at a distance as far ahead as the plaintiff, driving the automobile, could reasonably have expected his lights to disclose an obstruction. The scene of the accident was a city street, and so far as is disclosed by the opinion, the street was straight and its surface level.

In *Knoxville Ry. & Light Co.* v. *Vangilder,* the driver of the damaged automobile testified that he was blinded by the "extraordinarily bright" lights of an approaching automobile, while rounding a curve, so that he could not see an obstruction, with which he collided, until too late to avoid it. The court ruled: "The fact that the bright light from the large automobile was shining in the face of Vangilder, and that he was turning a curve where his own light did not shine directly in the way his machine was going around the curve, was a greater reason that he should have stopped or slowed up his machine, so as to avoid running into a place of danger." This ruling was predicated on the particular facts of the case, which facts, in the opinion of the court, charged the driver of the automobile with notice of imminent danger which he might have avoided by reducing his speed or stopping.

In *Tenn. Cent. Ry. Co.* v. *Schutt,* the driver of the automobile, in which plaintiff was riding when injured, ran into the side of a railroad box car which was standing on a grade crossing of the street and railway. There was nothing to distinguish the case from that in which the rule was formulated, and the Court of Appeals properly held the driver guilty of the only negligence disclosed by the facts of the case, the proximate cause of the accident.

*Cleveland Transfer Co.* v. *Clark,* 6 Tenn. App. 364, was removed to this court by *certiorari,* and the judgment of the Court of Appeals was affirmed for reasons stated in a memorandum opinion filed. That opinion, prepared for the court by the Chief Justice, revealed that the writ of *certiorari* was granted in order that the court might reexamine and reconsider the rule of conduct prescribed in *West Const. Co.* v. *White, supra.* But the court con-

cluded that the directed verdict for the defendant in that case was sustained by the fact that the plaintiff was not keeping such a lookout nor exercising such care in driving as is required of the driver of an automobile on city streets, and the judgment was affirmed "regardless of the soundness and applicability" of the rule of the case cited.

But the rigor of the rule was relaxed, or its application denied, by the Court of Appeals, in two cases in which we denied petitions for the writ of *certiorari*: *Patterson* v. *Kirkpatrick,* 11 Tenn. App., 162; *Huntsman Bros., Inc.,* v. *Grocers Baking Co.,* 12 Tenn. App., 535.

In the first of the cases just cited the plaintiff's automobile collided with the extended body of a parked truck. This body was a floor, without sideboards, only a few inches thick, extending horizontally several feet beyond the rear axle and wheels. The truck was parked with its front wheels headed to the curb, 27 feet from a corner. The plaintiff testified "that he did not see the truck unt l the collision occurred, because his lights were deflected to the right in turning the curve, and when he straightened up he was within seven or eight feet of the truck and saw the bulk of something, but could not see the truck or the projecting floor because its body and the floor were above the rays of his lights." The Court of Appeals distinguished the case before it from the facts of the earlier cases decided by this court, and ruled as follows: "The question in this case was whether an ordinarily prudent man driving a car would anticipate an obstruction up in the air in the road, such as a cable stretched across the road, or a pole, or as in this case, a floor projecting out into the road, and should he accommodate his lights to such conditions and then drive at

such rate of speed as to be able to stop when he saw such obstruction. This being out of the ordinary, the question of whether he was negligent and whether it contributed as a proximate cause to the accident, was properly submitted to the jury.''

In *Huntsman Bros., Inc.,* v. *Grocers Baking Co.,* plaintiff's automobile was almost abreast of another automobile traveling in the opposite direction, when his headlights revealed a truck parked without lights just ahead of him, and so near that a collision could not be avoided. The lights of the approaching automobile had prevented plaintiff from seeing the parked truck sooner. The unusual conditions of danger present and emphasized by this court in *Knoxville Ry. & Light Co.* v. *Vangilder, supra,* were absent, and the Court of Appeals declined to apply the rule of *West Const. Co.* v. *White* to the facts of the case. The Court of Appeals said: ''In the case at bar the drivers of the moving cars followed a course that all men pursue. They attempted to pass each other without stopping, which made it necessary for each to drive into a dark hole as the cars came alongside of each other. So far as visibility is concerned, the lights of each car diminished the length of the radius of the lights of the other to almost the vanishing point at the place of passing. . . . The ordinary prudent person does not stop under such circumstances; he expects others who find themselves in this place of danger to have regard for their own safety and display a light of warning.''

The rule formulated and applied in *West Const. Co.* v. *White* was no more than an application to given facts of the familiar rule that the test of negligence is whether the action under scrutiny was in accord with the actions of reasonably prudent men under the same or similar

circumstances. This was recognized by the able opinions of the Court of Appeals in.the two cases last cited, in which it was ruled that exceptional circumstances made the applicability of the general rule a question of fact for the jury rather than a question of law for the court.

The accident in which petitioners were injured occurred on a state highway, between two populous communities. This highway, as well as others of like character, was built to accommodate vehicles traveling at a high rate of speed. Speed as a factor of negligence in the operation of an automobile has been rendered of minor importance by common experience and by the removal of an arbitrary miles-per-hour limit from the statutes. These conditions have relatively increased the degree of negligence and danger involved in the parking of stationary vehicles or other obstructions on the paved surface of a highway. Travelers have become more confident of a free and unobstructed passage ahead on the highways. In these circumstances we cannot now say with confidence, as a matter of law, that a person of ordinary prudence and caution would have reduced his speed below the rate of twenty-five miles an hour on approaching the crest of a grade, under the conditions in which petitioners were placed, because the surface of the pavement could not be seen beyond the crest. They had the legal right to expect that an obstruction just beyond the crest would be evidenced by a warning light, and whether they were proceeding negligently was at least a question of fact for the jury.

Adhering to the general rule that it may be negligence in law to operate an automobile through darkness at a rate of speed which will not permit the avoidance of an obstruction disclosed by the rays of the lights with

which the automobile is equipped, we are of opinion, and so rule, that exceptional circumstances will render the rule inapplicable, as contrary to the practice and experience of persons of ordinary caution and prudence. The emergencies and hazards of present-day travel by automobile are many and varied, and we think no arbitrary or universal definition of the circumstances which will render the rule inapplicable is possible. The facts and circumstances of the cases in which the rule is invoked, weighed in the light of observation and experience, must control and direct the ruling of the court in each particular case, as in other negligence cases.

The judgments of the Court of Appeals, dismissing the two cases, will be reversed, and the judgments of the Circuit Court will be affirmed, with costs.