# STRICKLAND TRANSP. CO. v. DOUGLAS.—264 S. W. (2d) 233.

Western Section. September 17, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

422

James W. Manire, and Burch, Porter & Johnson, all of Memphis, for plaintiff in error.

Grady Agee and Charles G. Morgan, both of Memphis, for defendant in error.

CARNEY, J. This was a suit brought by the plaintiff below, Luther Douglas, against the defendant, Strickland Transportation Company, Inc., for personal injuries and property damages received as a result of driving his automobile into the back of defendant's trailer which was parked at night on the east side of Main Street in Memphis, Tennessee, on or about July 6, 1951. The case was tried to a jury and the jury returned a verdict of $1,790 for personal injuries and $1,000 for property damages, making a total judgment of $2,790, which judgment was approved by the trial judge and from which the plaintiff-in-error, Strickland Transportation Co., Inc., brings this appeal in the nature of writ of error.

At the conclusion of plaintiff's proof, and also at the conclusion of all the proof in the case, the defendant, Strickland Transportation Co., Inc., moved for a directed verdict, which motion was overruled by the trial court. Assignment of Error #1 avers: "There is no evidence to sustain the verdict of the jury".

Assignment No. 2 avers: "The trial court erred in overruling the motion of the defendant for a directed verdict at the conclusion of all the evidence. This was error because:

"(1) All of the evidence and all of the inferences to be drawn therefrom failed to show any actionable negligence on the part of defendant;

"(2) The undisputed proof shows that the plaintiff was guilty of direct and proximate contributory neg-

ligence which caused or contributed to the accident and resulting injuries."

These Assignments require a consideration of the facts of the case, which are as follows:

Main Street in Memphis, Tennessee, runs north and south and is approximately 40 feet wide. There is a viaduct which crosses Main Street from east to west and there are piers under the center of said viaduct with the north-bound traffic on Main Street using the east driving lane and the south-bound traffic using the west lane. The northbound driving lane under the viaduct is approximately 19 feet wide and about 100 feet long. The interior of the viaduct is shown by the proof to have been brightly lighted at the time of the accident. On the night of July 6, 1951, about 10:30 P.M., the plaintiff, Douglas, who was 47 years old and who was employed by the I. C. Railroad for over 25 years, was driving his 1947 Buick automobile northwardly along Main Street at a speed of 20-25 miles per hour, and drove under said viaduct from south to north. Plaintiff's lights were on low beam and as he drove through the viaduct a car approached him from the rear at a high rate of speed and the driver blew his horn to pass. As the plaintiff came out from under the viaduct he met some cars travelling southward along the west driving lane of Main Street and the lights of these cars were on and faced the plaintiff, Douglas; plaintiff, Douglas, pulled to the right to let the northbound car which had sounded its horn pass him, and as he did so he ran the right front of his Buick automobile under the left rear of the bed of a large trailer belonging to the defendant, Strickland Transportation Co., Inc. The right side of the automobile from the front to the windshield was demolished and the plaintiff sustained severe cuts and bruises, including a broken arm,

which the evidence shows to have resulted in a 15% permanent disability to the left hand.

The trailer of defendant, Strickland Transportation Co., Inc., was loaded, about 8 feet wide, approximately 36 feet long, approximately 14 feet high, and its total weight loaded was estimated to be 35,000 to 40,000 pounds.

The trailer was made of aluminum and was parked on the east side of Main Street facing north, and only the trailer itself was so parked, the tractor or engine portion of the trailer having been moved after the trailer was parked in place. The Strickland Transportation Co., Inc., had offices located nearby and owned a number of similar trailers and had insufficient room to park all of its trailers on the grounds owned or leased by Strickland Transportation Co., Inc. There were no lights or flares on or near said trailer. There were some reflectors on the back of the trailer, but the proof shows that the entire rear of the trailer was covered by mud, dirt and road film and that the reflectors were also covered by mud, dirt and road film and, therefore, unable to reflect the lights of plaintiff's automobile as it approached the rear of the trailer. The trailer was parked about 30 feet north of the northern margin of the viaduct, and at this point Main Street runs on a slight incline to the north. The area immediately to the rear of the trailer was much darker and less brightly lighted than the interior of the viaduct. In fact, it was so dark at the rear of the trailer that the investigating officers had to use flashlights to read certain numbers off the back of the trailer. The bed of the trailer was about 4 feet off the pavement. Main Street is a very heavily travelled street. The ownership of the trailer and the parking of the same by its agents are admitted by Strickland Transportation Co., Inc.

The plaintiff, Douglas, alleged common law negligence in parking said trailer on such highly travelled thoroughfare and in leaving the same unlighted and unattended, and also alleged the violation of certain city ordinances relative to parking, hereinafter referred to. The defendant in special pleas denied virtually all other allegations of the Declaration except that Main Street is a heavily travelled thoroughfare and that the trailer was parked on the east side thereof at the time of the collision. The defendant further affirmatively charged the plaintiff with contributory negligence in failing to have his vehicle under control, to keep a proper lookout ahead, in failing to see the trailer within his range of vision, and to reduce his speed which was alleged to be excessive under the circumstances. The defendant also denied that Ordinances 1747 and 1714 hereinafter referred to were in effect at the time of the collision.

The jury heard the evidence and decided the issues in favor of the plaintiff. We think there was sufficient evidence to support the finding of negligence on the part of defendant, and Assignment No. 1 is overruled.

The plaintiff-in-error strongly insists upon appeal that the plaintiff, Douglas, was guilty of contributory negligence as a matter of law and that the motion for a directed verdict should have been sustained by the trial judge. Particularly does the plaintiff-in-error, Strickland Transportation Co., Inc., insist that the fact that plaintiff, Douglas, struck the truck without ever having seen the same makes him guilty of contributory negligence as a matter of law, and in support of such insistence relies upon the cases of Main Street Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665; King v. Tennessee Central R. Co., Tenn. App. 1952, 253 S. W. (2d) 202; Halfacre v. Hart, 192 Tenn. 342, 346, 241 S. W. (2d)

421; Harris v. Miller, 24 Tenn. App. 332, 144 S. W. (2d) 7, and other cases cited in plaintiff-in-error's brief.

We live in a motor age and with the tremendous increase in the number of motor vehicles using our streets and highways, a new yardstick must be used to measure the standard of due caution and reasonable care in the operation of motor vehicles on our highways. No longer can he rely on slow speed, good brakes and proper lookout ahead. The modern motorist must not only keep a proper lookout ahead, but also must watch traffic and pedestrians on each side and to the rear. Obviously he cannot look in all directions at the same time. Formerly the exercise of due care required the motorist to drive within the range of his lights. Under existing highway conditions, a motorist would cause unbelievable havoc if he attempted to slow down or stop his car every time he was faced with the hazard of driving into a blind spot caused by the lights of an approaching car. "New occasions teach new duties" and "Time makes ancient good uncouth". Hence our Courts have modified the old rule by which the conduct of motorists in the operation of motor vehicles upon our highways and streets has been measured.

We think that the law in Tennessee today as developed by the cases of Main Street Transfer & Storage Co. v. Smith, 166 Tenn. 482, 63 S. W. (2d) 665; Virginia Avenue Coal Co. v. Bailey, 185 Tenn. 242, 205 S. W. (2d) 11; and Halfacre v. Hart, 192 Tenn. 342, 346, 241 S. W. (2d) 421, is that the assured clear distance rule does not apply where the motorist encounters a dangerous situation which in the exercise of reasonable care he had no reason to expect, and that drivers must use reasonable care under the circumstances which exist at the particular time, and the standard for such reasonable care is flexible, some occasions and sets of circumstances requiring a

higher degree of care than others and that, therefore, the question of whether a plaintiff under a certain set of circumstances did or did not exercise the required standard of care is a question for the jury to determine.

■ Applying this rule to the case at bar, we think the issues were properly submitted to the jury to determine whether or not the plaintiff was guilty of contributory negligence in failing to see the trailer before he struck it, or to determine whether or not, as plaintiff alleged, his attention was necessarily distracted at the time of the impact by the sounding of the horn of the fast car from the rear, and whether or not his vision and lookout ahead were impaired by the lights of the cars meeting him from the north. These issues were decided by the jury unfavorably to the defendant, Strickland Transportation Company, Inc. The trial judge approved the verdict of the jury and we cannot say that all reasonable minds must agree that under the facts of this case the plaintiff, Douglas, was guilty of negligence which proximately contributed to his injuries as a matter of law. Therefore, Assignment of Error No. 2 is overruled.

■ In Assignment of Error No. 3 plaintiff-in-error assails the action of the trial judge in charging City Ordinance No. 1736 which is as follows:

"Section 1736. The chief of police is hereby authorized to designate spaces upon either side of any street in the city where vehicles shall not be parked. The chief of police shall locate these spaces with regard to public convenience and to meet the conditions of traffic. The chief of police shall also have authority to regulate or prohibit the parking of vehicles upon any property owned or controlled by the city."

Since we find no proof in the record to indicate that the Chief of Police or anyone at his direction had ever designated that portion of Main Street upon which the trailer was parked for "no parking", we think it was error for the trial judge to charge such ordinance because it could have no bearing upon the liability of the defendant, under the proof, and the Assignment of Error is sustained. However, it does not affirmatively appear that such error affected the result of the trial, and is not reversible error. Section 10,654 Tenn. Code.

In Assignment of Error No. 4 the plaintiff-in-error assails the action of the trial judge in charging City Ordinance No. 1747 which is as follows:

"Section 1747. It shall be unlawful to leave standing in any street or public place, any vehicle not in use at night, or when the horses are not harnessed to horsedrawn vehicles, or any handcar or pushcart."

It is contended that this special ordinance was impliedly repealed by the enactment of Section 1741 of Chapter 42 of the City Ordinance on June 17, 1941. Since both sections 1741 and 1747 are contained in the 1949 Memphis Municipal Code and do not necessarily conflict with each other, and the subject matter covered by Section 1747 is not fully covered by Section 1741, we do not think a repeal by implication should be adjudged. Therefore, Assignment of Error No. 4 is overruled.

We have considered Assignments of Error No. 5 and No. 6 relating to the charge of the Court and it is our opinion that said two portions of the charge taken into consideration of the case and other portions of the charge were proper. Accordingly, Assignments of Error No. 5 and No. 6 are overruled.

Assignment of Error No. 7 assails the action of the trial judge in charging the jury as follows:

"The court charges you that if it should be found from the evidence that there are available witnesses who have within their knowledge material and pertinent facts concerning the matters under investigation, who are under the control of, or the relations of those witnesses with one of the parties is such that they would naturally favor that party, and that party fails to call them, without reasonable explanation of their failure to do so, the jury will be warranted in inferring that their testimony would be unfavorable to the party failing to call such witness."

█ The record shows that the trailer which was parked on Main Street had recently returned from a road trip to Arkansas. The driver of the truck or the one last in charge of the truck and who parked the truck did not testify and the record is silent as to his whereabouts. No reason is given for his failure to testify. We think under these circumstances the Court was justified in charging the jury as above set out. Therefore, Assignment of Error No. 7 is overruled.

█ We have considered Assignments of Error Nos. 8, 9, and 10 and 12 relating to defendant's special requests 1, 2, 3, and 5, which were refused by the trial Judge. We think the matters contained in these four special requests were sufficiently covered in the Court's charge as given, and a failure to give any of the said special requests was not reversible error. Assignments of Error Nos. 8, 9, 10, and 12 are overruled.

Assignment of Error No. 11 complains of the refusal of the trial judge to charge defendant's special request No. 4. It is our opinion that said special request No. 4 does not contain an accurate statement of the law as applicable to this case and, therefore, the trial judge was

justified in not charging said special request No. 4. Assignment of Error No. 11 is overruled.

 Assignment of Error No. 13 complains of refusal by the Court to admit some four photographs of the scene of the accident. The photographs were taken in the daytime, whereas the accident occurred at night. Plaintiff's case was partially predicated upon the fact that it was very light under the viaduct and dark outside the viaduct, and these pictures show the very opposite of such facts. The pictures indicate that it was dark under the viaduct and light outside the viaduct. Unless the picture fairly represents the scene at the time of the collision, then it is not admissible.

 It was contended that the photographs were sought to be introduced solely to show the physical facts, such as incline or lack of incline in the road, the relative location of certain street lights, etc. Certainly these same physical facts could have been proved in some other manner than by the introduction of a photograph which portrayed a set of circumstances entirely opposite to that shown by the witness, to wit, dark under the viaduct and light outside, whereas the witnesses testified that it was light under the viaduct and dark outside. As stated by the trial judge: "Sometimes it is hard to get a picture out of one's mind." The picture identified as Exhibit No. 1 to cross-examination of plaintiff's witness, Bivens, and Exhibit No. 4 to the testimony of defendant's witness, Barnes, does not show a view of the viaduct and is, therefore, not subject to the same objection concerning the comparison of light outside and under the viaduct. However, it is not a picture of the truck involved in the case on trial, and the picture also shows a number of other vehicles not proven to have been parked on Main Street at the time of the collision. The real basis for the

admission of any photograph in evidence is to assist the jury in finding the true facts and to decide the issues involved. "Generally speaking, the question whether an offered photograph is practically helpful or instructive to the jury upon any material issue in the case is a preliminary question to be determined by the trial judge." Scott, Photographic Evidence, 1942, page 482. Also to same effect see 20 Am. Jur., Evidence, Sections 729 and 730; Barnes v. Scott, 35 Tenn. App. 135, 243 S. W. (2d) 133. In this case we do not see any abuse of discretion on the part of the trial judge in refusing to admit the photographs in evidence, and the Assignment of Error No. 13 is overruled.

Therefore, judgment will be entered in this Court in favor of the defendant-in-error, Luther Douglas, against Strickland Transportation Co., Inc., for $2,790, with legal interest from October 10, 1952, and costs.

Avery, J., concurs.

Swepston, P. J. (dissenting).

I respectfully dissent from the majority view. I am aware of the modification of the former rule of West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301, and Knoxville Ry. & Light Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111, so that now proof from which "exceptional circumstances" may be found to exist requires submission to the jury of the question whether plaintiff was guilty of contributory negligence under those circumstances, but I am unable to see any exceptional circumstances in this case.

Plaintiff testified he had been traveling this route for about twenty-five years, was familiar with the surroundings and that vehicles were frequently parked at the curb in that vicinity, that he had seen defendant's trailers parked there before, although never so close to the north

opening of the viaduct; that the lights under the viaduct were brighter than the street lights outside the viaduct; that the lights under the viaduct were the only lights that bothered him and they were the only bright lights he saw, but he was not blinded by any lights exactly and could see at all times; that there was a street light north of the viaduct on the east side and one on the west side of the street; that when a car behind him coming at a rapid rate sounded its horn, he pulled to the right to let it pass and struck the trailer without having seen it.

He testified that when he emerged from under the viaduct it was dark outside but it is perfectly clear that he only meant it was not as light outside as it was under the viaduct, in view of his testimony above referred to.

The case made by his own testimony and that of his witnesses is that the street light on the east side north of the viaduct was between the viaduct and the trailer and that the entire area around there was well lighted and that Main Street is a ''white way''. One officer did testify that he had to use a flashlight to enable him to read the license plate on the rear of the trailer, but particularly in view of the dirty condition of the trailer as well as the difference between being able to see the numbers on a dirty license plate and being able to see the trailer itself that evidence has no probative value under the undisputed evidence above mentioned as to the area being well lighted.

The plaintiff's testimony eliminates also any ''blind spot'' theory or contention that the lights of the cars approaching from the other direction blinded him, as that theory was developed and applied in the Main Street Storage case first modifying the old rule where the collision occurred at night on a highway when the plaintiff

had to depend solely on his headlights to be able to see ahead.

I think the whole case according to the evidence for plaintiff, despite the averments of his declaration and the argument of his counsel, boils down to two facts—he did not see the trailer when in the exercise of ordinary care by simply looking he should have seen it, and he pulled to the right because a car behind him sounded its horn and he pulled to the right without looking.

There was nothing unusual about a vehicle being parked near the curb in that area, he had seen that happen before; there was nothing unusual nor any emergency about a car coming from behind and sounding its horn to pass. There was nothing unusual about the light situation.

This case does not fall into the category of any case where the modified rule has been applied. The weather conditions were good, the street was dry and the weather was clear. There was no obstruction in the usual line of travel and plaintiff would not have struck the trailer had he not pulled out of the regular line of travel—nobody drives close to the curb on a fifty-foot street especially when he knows vehicles are customarily parked against the curb, whether legally or illegally so parked. There was nothing abnormal about an underpass under a railroad, with a division in the center, being well lighted under the viaduct with lights brighter than the street lights outside—the whole area was well lighted and common experience evidences that one does not even need automobile headlights burning on a well lighted city street in order to see perfectly in spite of viaduct lights, neon signs, lights in business building fronts and so on.

I think the case as made by the plaintiff shows contribu-

tory negligence per se and a verdict should have been directed for defendant.

I thoroughly agree that the old rule should have been modified to meet present driving conditions so as to allow a case of ''exceptional circumstances'' to go to the jury, but if slight variations from perfect road, weather and light conditions etc., are going to be called exceptional circumstances, we might as well abolish the doctrine of contributory negligence per se and let all cases go to the jury.