Stanley GAFFORD, Plaintiff-Appellant,

v.

TRANS–TEXAS AIRWAYS, Defendant-Appellee.

No. 14553.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1962.

George W. Grider, Memphis, Tenn. (Jesse E. Johnson, Jr., of Burch, Porter, Johnson & Brown, Memphis, Tenn., on brief), for appellant.

Edward W. Kuhn, Memphis, Tenn. (Henry T. V. Miller, of McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, Tenn., on brief), for appellee.

Before MILLER, Chief Judge, SIMONS, Senior Circuit Judge, and CECIL, Circuit Judge.

CECIL, Circuit Judge.

This appeal arises out of an action in the District Court for the Western District of Tennessee, wherein the plaintiff-appellant sued the defendant-appellee for damages sustained by reason of injuries received in an airplane accident. The parties will be referred to as plaintiff and defendant, as they were in the trial court.

The plaintiff, Stanley Gafford, is and was at the time of filing his action a resident and citizen of the state of Tennessee. The defendant, Trans-Texas Airways, is and was at all times pertinent to this action a corporation organized and existing under the laws of the state of Texas. It was the owner of a fleet of commercial airplanes which it used as a common carrier of passengers between Memphis, Tennessee, and various cities in the states of Arkansas and Texas.

On or about March 26, 1959, the plaintiff purchased a ticket and boarded one of defendant's planes at Memphis with Texarkana, Texas, as his destination. When the plane was within ten- or fifteen-minutes' flying time of Hot Springs, Arkansas, after being in moderate turbulence for a few minutes, it struck violent turbulence, which tossed the plaintiff about in his seat, dislodged accessories in the plane and severely injured the plaintiff.

Res ipsa loquitur is pleaded in the complaint along with five specific allegations of negligence. The charges of negligence are to the effect that the defendant did not take steps to avoid the turbulence and that it continued to fly the plane at a high and dangerous rate of speed in rough and turbulent weather.

The case was tried to a jury and resulted in a verdict and judgment in favor of the defendant.

One of the assignments of error is that the trial judge refused to instruct the jury on the doctrine of res ipsa loquitur.

■ There is no rule that res ipsa loquitur applies generally to accidents occurring in airplanes while in flight. Like other common carriers and other negligence cases, the doctrine applies only when warranted by the facts of the particular case.

It has been held to apply when a plane crashed into a mountain and all persons aboard were killed. Northwest Airlines, Inc. v. Rowe, etc., 226 F.2d 365, C.A. 8. The doctrine was applied in Haasman v. Pacific Air Express (Backman v. Des Marais et al.), D.C., 100 F.Supp. 1, 13 Alaska 439, affirmed 198 F.2d 550, C.A. 9, cert. denied 344 U.S. 922, 73 S.Ct. 388, 97 L.Ed. 710, where a plane was lost and no trace of it ever found. See also Lobel v. American Airlines, Inc., 192 F.2d 217, C.A. 2, cert. denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703. Res ipsa was held to be applicable in this case for the reason

that the plane was in the defendant's exclusive control and the accident was not one which happens in the ordinary course of events without the negligence of someone.

Cudney v. Midcontinent Airlines, Inc. et al., 363 Mo. 922, 254 S.W.2d 662, presents a factual situation very nearly parallel with the case at bar. In this case the plane suddenly dropped, jerked and jolted and the plaintiff was thrown violently from her seat and injured. The court held that the doctrine of res ipsa loquitur was not applicable. The court said at p. 930, 254 S.W.2d at p. 667: "This is not to say that the occurrence involved here was caused by a downdraft or any other known specific cause, but it is to say that there are other causes of planes jolting and dropping for a distance than negligence in their operation and there is no circumstance in this record from which it is a fair and reasonable inference that this occurrence was due to negligence. Smith v. Whitley, [223] N.C. [534] 27 S.E.2d 442. In short, it is not possible at this date, as it may be in another day, to say that it is the common experience of mankind that commercial airliners do not lurch and drop for some distance except for negligence in the operation of the plane and, therefore, it is not now possible to confidently apply the doctrine of res lipsa loquitur to the mere occurrence in the circumstances relied upon by Mrs. Cudney, as it is in the instance of certain crashes,—there is now no such balance of probabilities."

Judgment was reversed and the case remanded so that the plaintiff might plead specific acts of negligence.

See the following cases in which it was held that the doctrine was not applicable: Cohn v. United Air Lines Transport Corporation, 17 F.Supp. 865, D.C.Wyo.; Boulineaux et al. v. City of Knoxville et al., 20 Tenn.App. 404, 99 S.W.2d 557, and Herndon v. Gregory, 190 Ark. 702, 81 S. W.2d 849, 82 S.W.2d 244. In this last case it was held that res ipsa did not apply because it was as consistent with the theory that the accident was unavoidable as it was that it was due to negligence.

In the case at bar it appears that the dropping and lurching of the plane was caused by a downdraft in the air, as a result of violent turbulence. There is no dispute about this. It is not claimed that the downdraft was caused by negligent operation of the plane. There is no evidence that the action of a plane, once it is in a downdraft, can be controlled by something which a pilot does or fails to do. It is claimed specifically that the pilot was negligent in several respects in not avoiding the turbulence.

As claimed by counsel for plaintiff in their brief, the real issue related to the speed of the plane. Should the pilot in command of the plane have ordered it slowed down when turbulence was first encountered and what constituted a safe speed in that type of turbulence. These issues were capable of proof and were tried and submitted to the jury.

■ We find no error on the part of the trial judge in refusing to instruct the jury on the doctrine of res ipsa loquitur.

Another assignment of error relates to the failure of the defendant to put David B. Lamb on the witness stand. Mr. Lamb was a captain and the chief pilot in charge of the plane at the time of the accident. Although it was not definitely shown by the record, he was presumably in the employ of the defendant and in Dallas, Texas at the time of the trial.

James E. Palmer was co-pilot on the plane and had operated the plane from Memphis to the point where the accident occurred. Palmer held the following certificates for flying: commercial pilot, instrument rating for flying weather, multi-engine airplanes, single engine airplanes, etc. He also taught various phases of flying for about five years. He did not have airline transport rating which apparently is necessary to fly as pilot in command.

The defendant placed Mr. Palmer on the witness stand and he testified fully as to all of the details of the trip from Memphis to the point of the accident. He was cross-examined at length by counsel for the plaintiff. The plaintiff had previously taken the deposition of Captain

Lamb which had been filed in court. He was not called as a witness by either party and his deposition was not read.

Counsel for plaintiff before argument requested and the court refused an instruction which is as follows: "I charge you that if you find from the proof in this case that the defendant had it within its power to produce Captain Lamb, the pilot in command of its Flight No. 65, the defendant's failure to produce such witness affords an inference that the testimony of the witness would not support the defendant's contentions."

It is claimed by counsel for plaintiff that under Tennessee law this instruction should have been given. Stevens v. Moore, 24 Tenn.App. 61, 139 S.W.2d 710, is cited in support of this contention. This case involved damage to a rug while in the process of cleaning. The defendant's wife who worked in the office of the cleaning firm testified together with a driver for the defendant. Neither witness knew anything about the cleaning process. The defendant himself and two or three employees were familiar with the actual work of cleaning but none of them testified. It was held that the rule claimed by counsel for plaintiff was applicable and that the jury should have been so instructed. In laying down this rule the court quotes copiously from 22 C.J. section 55 et seq.

The court says, at pp. 72–73, 139 S.W. 2d at p. 717 quoting from C.J.: " 'Failure of a party to call an available witness possessing peculiar knowledge concerning the facts essential to a party's case, direct or rebutting, or to examine such witness as to the facts covered by his special knowledge, especially if the witness would naturally be favorable to the party's contention, relying instead upon the evidence of witnesses less familiar with the matter, gives rise to an inference that the testimony of such uninterrogated witness would not sustain the contention of the party. No such inference arises where the only object of calling such witness would be to produce corroborative, cumulative, or possibly unnecessary evidence;' "—

The rule was applied without discussion by the court in Strickland Transp. Co. v. Douglas, 37 Tenn.App. 421, 264 S.W.2d 233, where the defendant did not call as a witness the driver who parked a truck on the street which was the subject of the plaintiff's claim for damages.

■■ It appears that the Tennessee rule on this subject derives from C.J. This rule is discussed in 31 C.J.S. Evidence § 156c. One of the requisites for applying the rule is that the witness possesses peculiar or special knowledge. No inference arises against a party for failing to call a witness where such witness would only produce corroborative or cumulative evidence. At p. 860 it is stated in the text, "Any inference drawn from such failure is not equivalent to direct evidence; it does not take the place of evidence of material facts, or shift the burden of proof so as to relieve the party on whom rests the necessity of establishing a prima facie case; the inference is not conclusive."

In the case at bar there is no indication that Lamb, although he was the command pilot, had peculiar or special knowledge not known by Palmer. Palmer was the operator and had the peculiar and special knowledge of the speed of the plane, flying conditions, turbulence, etc. Lamb's testimony at most would have been cumulative.

■ We conclude that the court did not err in refusing the requested instruction.

Counsel for the plaintiff further complain that they were not permitted to comment in argument to the jury on the absence of Lamb, the command pilot, as a witness. The record does not show a denial of a right to comment, as a fact in the case, that Lamb did not testify. It does show that they were denied the right to tell the jury their version of the law with reference to an absent witness.

■ Mr. Grider, for the plaintiff, stated in argument, "I think the Court is going to instruct you that where a witness is peculiarly under the control of one of the parties—" Here he was inter-

rupted by the judge who said he had declined that instruction. Counsel was clearly wrong in attempting to tell the jury what the judge was going to charge as a matter of law, when he had been informed just before argument that the charge was denied.

■ Our understanding of comment to the jury on the absence of an important witness would take the form of pointing out the fact that such and such a witness was not called, why wasn't he called? etc.

Chesapeake & O. Ry. Co. v. Richardson, 116 F.2d 860, C.A. 6, cert. denied 313 U.S. 574, 61 S.Ct. 961, 85 L.Ed. 1531, which counsel for defendant cite as the leading Sixth Circuit case on the subject of failure to call a witness, involves the defendant's objection to the plaintiff's comment to the jury in argument along the lines just suggested. Counsel for plaintiff in argument said, 116 F.2d p. 865: "There were three men who were right there and know what happened and they are their employees. Don't you suppose if they could contribute a single word that would help them out on that, they would be here testifying?" Defendant's objections were overruled. This is comment on the facts concerning an absent witness within the scope of the record and is not an attempt to tell the jury the law applicable to those facts. The reviewing court found no error in permitting these comments. At p. 865 the court said: "It is a settled rule that counsel must restrict himself to the record for his facts and resort only to reason for his deductions, but within these limits freedom of ample argument is maintained. The extent of allowable comment rests largely in the trial court's discretion."

■ As indicated we think the question of whether counsel could comment to the jury on the absence of Lamb as a witness was never squarely presented to the trial judge. But had it been he would have been entirely within his discretion to allow it or not. See also Kierce v. Central Vermont Ry., Inc., 79 F.2d 198, C.A. 2, cert. denied 296 U.S. 629, 56 S.Ct. 152, 80 L.Ed. 447.

■ In the matter of this absent witness, counsel for plaintiff claim that the court committed reversible error in misstating the law after interrupting counsel's argument. After interrupting the argument and telling counsel that he had declined that instruction, the trial judge said: "And I think it only fair in that connection to say at this time that the witness—or, rather, it is not shown in the trial of this case that he was not accessible to both sides of this lawsuit and subject to subpoena. I think it only fair that the Court make that statement at this time."

The judge's statement was prompted by counsel's attempt to tell the jury that the judge would give an instruction which he knew had been denied. This was not the time nor the way to again raise this involved question of law, upon which the judge had already ruled. We will not measure with exactitude the judge's statement under these conditions. We find no prejudicial error as a result of it or any abuse of discretion on the part of the trial judge in making it.

■ Another complaint made by counsel is the refusal of the trial judge to grant request for an instruction as follows: "Members of the jury, you are instructed that the proof in this case shows that the defendant Trans-Texas Airways has in its possession various instructions and directions to its pilots relating to the operation of its aircraft under conditions of heavy turbulence which it has failed to produce. You are instructed that the failure of the defendant to produce these instructions in this case authorizes you to conclude that had they been produced they would have been detrimental to the defendant Trans-Texas Airways."

The record shows that there was no evidence before the jury to warrant this instruction. Counsel refer to repeated attempts to get these instructions, with reference to safe flying speeds, in documentary form from the defendant but without success. These attempts are not in evidence before the jury.

Palmer was asked on cross-examination, p. 110a, Appendix, "Have you got any instructions on safe speed under varying conditions? A. Oh, yes, sir, the complete operation. Q. Have you got it here? A. No, but I can get it, show it to you." Counsel did not request him to get it or pursue the matter further.

Aside from any question of the correctness of the charge, the trial judge was justified in refusing the instruction.

Finally, counsel complain that the court erred in refusing to permit them to introduce the answers to certain interrogatories in rebuttal to Mr. Palmer's testimony. Upon an examination of the record concerning this matter, we find no merit to the claim.

For the reasons herein stated the judgment of the District Court is affirmed.